1    Julia Richter

2    201 3rd Street.

3    West Sacramento, CA 95605

4    (916) 676-5567

5    juliarichterlaw@gmail.com

6    In Pro Per

FILED

DEC 19 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

⑤ Pd
ISS

7

8            UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10    J. RICHTER,

                  Case No.: **C19-8300** *TSH*

11        Plaintiff,

12    vs.                    <u>COMPLAINT FOR DAMAGES FOR</u>
                           <u>VIOLATION OF CIVIL RIGHTS</u>

13    LISA AUSMUS, TODD MORK, SEKOU

14    MILLINGTON, ANNE KIRKPATRICK, in their     <u>JURY TRIAL DEMANDED</u>

15    individual capacities only, DOES 1 - 100, inclusive,

16

17        Defendants

18

19                          <u>JURISDICTION</u>

20    1.  This action arises under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the

21    United Sates Constitution; 42 U.S.C. § 1983; 42 U.S.C. §1985; 42 U.S.C. §1986; 42 U.S.C.

22    1988; and California State Laws.

23    2.  This Court has original jurisdiction over Plaintiff's constitutional and federal law claims

24

25    pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a).

26    3.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28

27    U.S.C. §1367(a) because they are part of the same case and controversy described by Plaintiff's

28    federal claims.

           <u>COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS</u>

## VENUE

4. Venue is proper in this court because Plaintiff's claims arose in this District and because, on information and belief, all defendants are and were at all relevant times residents of the State of California and/or of the Northern District of California.

## INTRADISTRICT ASSIGNMENT

5. The claims alleged here arise in the City of Oakland, State of California. Therefore, venue and assignment lie in the United States District Court for the Northern District of California, San Francisco or Oakland Divisions. 28 U.S.C. §1391(b)(2).

## PARTIES AND CAPACITIES

6. Plaintiff is an adult resident of California and a United States citizen.

7. Defendant Lisa Ausmus is and was, at all times relevant to this action, a Sergeant for the Oakland Police Department assigned to Internal Affairs Division. At all relevant times Ausmus reported to Todd Mork. Upon information and belief, Ausmus is, and has been at all times relevant to this action, a citizen and resident of California.

8. Defendant Todd Mork is and was, at all times relevant to this action, a Lieutenant for the Oakland Police Department assigned to Internal Affairs Division. Upon information and belief, Mork served in a supervisory role for the Oakland Police Department. At all relevant times Mork reported to Sekou Millington. Upon information and belief, Mork is, and has been at all times relevant to this action, a citizen and resident of California.

9. Defendant Sekou Millington is and was, at all times relevant to this action, a Captain of Police in the Oakland Police Department, assigned to Internal Affairs Division. Upon information and belief, Millington served in a supervisory role for the Oakland Police Department. Upon information and belief, Millington is, and has been at all times

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

2

relevant to this action, a citizen and resident of California.

10. Defendant Anne E. Kirkpatrick is, and was at all times relevant to this action, a Chief of Police in the Oakland Police Department. Upon information and belief, Kirkpatrick served in a supervisory role for the Oakland Police Department. Upon information and belief, Kirkpatrick is, and has been at all times relevant to this action, a citizen and resident of California.

11. Defendants Mork, Millington, and Kirkpatrick are referred to collectively herein as the "Supervisory Defendants."

12. The true names and capacities of John Does 1 - 100 are presently unknown to Plaintiff. Plaintiff is informed and believes, and based on such beliefs alleges, that each of said John Does is or was at times relevant hereto a citizen of the State of California and responsible for the damages suffered by Plaintiff. Leave of Court will be sought to amend this complaint to include the true names and capacities of the John Does as soon as such information becomes known to Plaintiff.

## FACTS

13. Plaintiff seeks preliminary and permanent injunctive relief against the Defendants' violation of her rights to due process of law and equal protection, and damages for the harm they have unlawfully caused and are continuing to cause her. Defendants are attempting to deprive Plaintiff of her employment, her salary, her reputation and her career under the pretext of a disciplinary proceeding based upon allegations which were investigated in bad faith, in retaliation for Plaintiff's exercise of her First and Fifth Amendment rights, and totally devoid of evidentiary support. Without relief from this Court, Plaintiff will suffer irreparable harm.

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

14. The Oakland Police Department ("OPD"), a municipal agency of the City of Oakland, California, has faced a widespread criticism for its handling of internal affairs investigations of its members. In the summer of 2016, the department's internal affairs' "inadequate" response to investigation of members' sexual involvement with a minor became the subject of national media attention. OPD Defendants chose to use Plaintiff's case as a means to try to improve the Department's image.

15. Plaintiff has been employed with the OPD since December 2013. On October 31, 2014 Plaintiff became a sworn officer and was assigned to Patrol Division. In September 2016, Plaintiff was assigned as an investigator to Special Victims Unit, Criminal Investigations Division.

16. Plaintiff has never been suspended during her employment with the OPD. She always strived to improve her skills as a patrol officers and later as an investigator. Plaintiff completed the following training during her employment:

- Search Warrant and Informant Management School

- Tactical Response to School and Community Violence Course

- Crisis Intervention School

- Preliminary Alcohol Screening Course

- Narcotics Investigations School

- Firearms/ Tactical Rifle School

- Bicycle Patrol School

- Basic Academy Instructor School

- Criminal Investigations Core Course

- Interview and Interrogation Techniques

<u>COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS</u>

- Child Abuse Investigations Course
- Conducting Unexplained Child Death Investigations

17. On May 14, 2018, during work-related training, under supervision of the OPD officer, Plaintiff suffered a serious work injury.

18. On May 21, 2018, Plaintiff filed an injury claim with workers compensation insurance and the claim was accepted.

19. After Defendants became aware of Plaintiff's permanent work injury and her intent to apply for disability retirement, they began scrutinizing her in an apparent attempt to disallow her disability claim.

20. Contrary to the principles of equity, State of California allows Oakland Police Department free itself of employer's tort liability if it fires the injured employee "for cause". That is because California Public Employees Retirement System (Cal PERS) benefits are partially funded by the employer's contributions. *Cal. Gov. Code. 20740-20760.*

21. Although normally the PERS board determines whether an applicant is disabled and thus eligible for retirement benefits, in the case of a "local safety member" such as police officer, the governing body of the contracting agency is required to make that determination. *Barberic v. City of Hawthorne*, <u>669 F. Supp. 985</u> (1987) (citing *Cal. Gov. Code 21024* (West 1985)).

22. PERS is responsible merely for <u>entering the formal decision</u> granting or denying disability retirement benefits (*Watkins v City of Santa Ana*, 189 Cal.App.3d 393 (1987)). Rather, it is the local agency that makes the <u>determination of capacity for job performance</u> (*Petrillo v. Bay Area Rapid Transit District*, <u>197 Cal.App.3d 798, 809</u>

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

(1988)). *Hutchinson v. Bear Valley Cmty. Servs.*, Case No.: 1:15-cv-01047 - JLT (2016).

23. Medical disability does not make the injured employee whole. "Medical disability retirement is not equivalent to a full salary with benefits, because it negatively affects an employee's property interest, as would any other reduction in salary or benefits." *Jordan v Kirkman*, 2008 US Dist. 9 LEXIS 110446. Defendants are trying to deprive Plaintiff of her right to receive medical disability, which would not even make Plaintiff whole for her work injury.

24. Furthermore, OPD never paid into Social Security System. Plaintiff cannot receive SSDI. OPD has not made the "disability determination" for over a year. Instead, Defendants decided to find an excuse for firing Plaintiff, making her a burden on public welfare and healthcare; all contrary to public policy.

25. Defendants know that their "firing" attempt is in substance the attempt to evade the payment for work-related disability. Defendants indicated they do not want to consider any disciplinary punishment short of termination, because otherwise Plaintiff would "still be on the books" and thus qualify for disability retirement, the outcome Defendants are looking to avoid. "The law favors substance over form." 2008 US Dist. 9 Lexis 93854.

26. On May 31, 2018 Plaintiff was referred for internal affairs investigation of missing citizen's property. She was cleared of allegations on July 12, 2019.

27. On July 16, 2018 (Plaintiff's scheduled day off), Plaintiff was subpoenaed to testify in court. She appeared on that day in court and later submitted a payment slip with the OPD payroll. According to the OPD Memorandum of Understanding (MOU), Plaintiff should be paid for at least four hours.

28. OPD employees attempted to punish Plaintiff for her disability by refusing to pay for her

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

appearance in court. In her email dated July 31, 2018, Jennie Lim (Administrative Analyst at OPD Medical Unit) falsely stated that since Plaintiff was on a medical restricted duty, she was not allowed be paid for her court appearance. Lim stated that any time Plaintiff works overtime, she must first obtain a permission from the OPD Chief of Police.

29. On August 1, 2018, Plaintiff asked Lim to provide which written rule Lim followed regarding this overtime policy for Plaintiff's future reference.

30. On August 8, 2018, Lim replied there was no written policy regarding medical restricted duty. This is untrue. Department General Order D-4 states that members and employees on extended illness/injury leave shall respond to duty-related subpoenas unless they are medically or psychologically unfit to appear in court. Department General Order D-1, states that no approval for overtime is required from a commander if the overtime is necessary to attend a court session in response to a subpoena.

31. On August 8, 2018, Lim copied Plaintiff's chain of command to these emails.

32. On August 9, 2018, Plaintiff's supervisor Sergeant Hamann Nguyen ordered her in his office and said Plaintiff was wrong for asking Lim for the written policy. Nguyen said to prevent Plaintiff requesting any overtime in the future that might fall on her day off, he would be ordering Plaintiff to work a five-day work week (Monday - Friday), as opposed to a four-day work week Plaintiff was working at the time (Tuesday – Friday).

33. Criminal Investigation Division investigators normally work a four-day week. The department-wide assignment for Plaintiff's position says the staff works four days per week. Furthermore, OPD Memorandum of Understanding states regularly scheduled days off may only be changed at the time of the patrol draw, which usually happens at the end

<u>COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS</u>

7

of a year. No one else in Plaintiff's unit was ordered to work a five-day week.

34. On August 24, 2018, Plaintiff was placed on administrative leave. Defendants directed that Plaintiff turned in her department-issued firearm, badge, police ID card, and the proxy card that allows access to the Police Administration Building. Defendants stripped Plaintiff from her police profession and her right to carry concealed weapon.

35. Defendants refused to tell Plaintiff the allegations against her. Plaintiff found about the allegations from Plaintiff's co-workers. The rumor at the department was that Plaintiff "is being investigated for testifying in court."

36. The contents of internal investigations are confidential by law. Cal. PC §832.8. Defendants failed to maintain the confidentiality. Plaintiff is currently seeking counseling and has been the subject of embarrassment, ridicule, and shame among her former co-workers.

37. On September 12, 2018 Plaintiff was referred to the FBI for criminal investigation. She was cleared on January 24, 2019. The FBI chose not to investigate the allegations. "Malicious prosecution is also actionable under [CA] state law where the defendant continues to prosecute a lawsuit discovered to lack probable cause". *Miller v Morris,* 2018 US Dist. 9 Lexis 75248.

38. The referral to the FBI investigation appeared to be related to Plaintiff's testimony in Federal Trial in Eastern District of California, Sacramento. Plaintiff was subpoenaed and compelled to testify on June 14, 2018. The testimony was at the time she was already injured on duty, on a medical leave from job and on prescribed medication. The trial judge held that Plaintiff's information and testimony she would give "is necessary to the public interest" (Trial Transcript, 06/14/18, p. 889, 23-25).

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

8

39. On July 19, 2019, Defendants signed Defendant Ausmus' Report of Internal Investigation of Plaintiff, approved Defendant Ausmus' findings, and recommended Plaintiff is terminated from her employment.

40. On October 2, 2019, Defendants provided Plaintiff with the "Skelly Packet" of their investigation.

41. On November 24, 2019 Plaintiff asked that Defendant Ausmus signed her Report of Internal Investigation under penalty of perjury. Defendant Ausmus claimed being harassed and Defendants threatened Plaintiff with disciplinary proceeding.

42. Defendants were informed of their violating constitution and clearly established laws on December 10, 2019 in a Notice and Opportunity to Cure but persisted their abuse of power.

## PROCEEDING

### Bad Faith Investigation and Malicious Prosecution by Defendants

43. Despite that the May 31, 2018 internal investigation, and September 12, 2018 criminal referral to the FBI resolved favorably to Plaintiff, Defendants persisted in creating an excuse for firing Plaintiff.

44. According to her "Report of Internal Investigations," Defendant Ausmus did not interview a single fact witness except for Plaintiff or do any relevant investigation aside from illegal use of the trial transcript of Plaintiff's 2018 immunized testimony of a third party proceeding. Defendant Ausmus' "investigation" lasted for over a year.

45. Where the nature of the termination of the criminal proceedings is neither indicative of nor inconsistent with factual innocence, then the court's conclusion on the favorable termination element should rebound in favor of the accused. *See e.g. Smith-Hunter v.*

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

*Harvey*, 734 N.E.2d 750, 753 (2000). It is universally recognized, that the gravamen of malicious prosecution actions is malice, the lack of probable cause, and the injury resulting therefrom. *Garvais v. U.S.*, 1010 US Dist. Lexis 13351.

46. Probable cause is lacking when the initiation of proceedings is motivated not by reasonably reliable information of criminal activity but purely by a desire to retaliate against a person. *Garvais v. U.S.*, 1010 US Dist. Lexis 13351.

47. "Malicious prosecution is also actionable under [CA] state law where the defendant continues to prosecute a lawsuit discovered to lack probable cause". *Miller v Morris*, 2018 US Dist. 9 Lexis 75248.

48. "Liability here is based not only on the initiation but also the continuation of the prosecution after having reviewed the [AUSA declination] letter. If an individual, after the initiation of criminal charges acquires the means of asserting the charge was not well founded or groundless, his or her failure to intervene and have the prosecution discontinued or to sever his or her connection with it subjects that person to malicious prosecution liability." *Garvais v. U.S.*, 1010 U.S. Dist. Lexis 13351.

49. On July 22, 2019, Defendants presented formal charges of A) 18 U.S.C. 1621 (perjury) and B) unidentified charge of "money laundering". The charges were based on Defendant Ausmus' investigation, and Supervisory Defendants' ratification of Defendant Ausmus' conduct.

50. "Fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U. S. 133, 136 (1955). This applies to **administrative agencies** which adjudicate as well as to courts. *Gibson v. Berryhill*, 411 U. S. 564, 579 (1973), *Withrow v. Larkin*, 421 U.S. 35, 46-47 (1975).

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

10

51. Bad faith generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction. *Baffert v. California Horse Racing Bd.*, 332 F.3d 613 (9th Cir. 2003) (citing *Kugler v. Helfant*, 421 U.S. 117, 126 (1975)).

52. And a proceeding is conducted in **bad faith** where there is "**financial bias** by the tribunal," as well as where it is "motivated by [a party's] suspect class or in **retaliation** for [his] **exercise of constitutional rights**," *N Group LLC v. Hawaii' County Liquor Com'n*, 681 F. Supp. 2d, 1209 (2009) (citing *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir.1997)).

53. Defendant Ausmus indicated in her Report of Internal Investigation that on September 19, 2018, she was advised by Captain Millington (Defendant Millington) that "the FBI was maybe conducting a criminal investigation" of Plaintiff (p. 2). Defendant Ausmus wrote that on January 24, 2019 she was advised "the FBI was not going to investigate [Plaintiff] for her alleged criminal activity." (p. 3).

54. On October 25, 2019, Plaintiff's administrative attorney requested Defendants to provide their communication with the FBI relating to the case. Defendants responded with silence.

55. On October 28, 2019 Plaintiff asked Defendant Ausmus for all Brady materials (including the referral to the FBI investigation and the FBI declination letters). Defendant Ausmus responded with silence.

56. On November 4, 2019 Plaintiff did the second request for all Brady materials. Defendant Ausmus gave an evasive answer that there was no declination letter. Supervisory Defendants did not respond.

57. On November 7, 2019, Plaintiff did the third request for all Brady materials including any

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

11

oral and written communication between Defendants and the FBI regarding Plaintiff's investigation. Defendants did not respond.

58. On November 11, 2019, Plaintiff did the fourth request for all Brady materials including any oral and written communication between the Defendants and the FBI regarding Plaintiffs investigation. Defendants did not respond.

59. Defendant Ausmus mentioned the FBI investigation only when it was convenient for her: to toll the one-year statute of limitations for her investigation and to pile on fabricated charges against Plaintiff. When she wrote "On 19 Sep 18, the FBI advised the Oakland Police Department they were investigating [Plaintiff] for possible criminal involvement... there is a preponderance of the evidence that [Plaintiff] should have reasonably known she could be under criminal investigation" (p. 52), she again conveniently failed to mention that the FBI decided not to investigate Plaintiff. This is an example of Defendant Ausmus deliberately misrepresenting evidence.

60. "Bad faith is not required to establish a civil *Brady* violation. Under *Daniels v. Williams*, *474 U.S.327 (1986)*, Plaintiff must establish that Defendants deliberately withheld exculpatory evidence from Plaintiff; not that the withholding was in bad faith; **deliberate, purposeful withholding of material evidence by law enforcement officers is sufficiently outrageous to support an inference of bad faith,** even if such a state of mind is not specifically required as a separate element of this constitutional tort." *Stoll v. County of Kern*, 2008 U.S. Dist. LEXIS 86535.

61. Defendants' proceeding was in bad faith. Under the guise of administrative action, Defendants violated First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution. Defendants formally charged Plaintiff with charges outside of their

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

jurisdiction, barred by statute of limitations, and "totally devoid of evidentiary support".

Defendants' proceeding was in bad faith because:

1. **Want of Subject Matter Jurisdiction.**

62. 18 U.S.C. §3231 states: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."

63. "It is the duty of every court on its own motion to inquire into the matters of its jurisdiction, irrespective of the wishes of the parties." *Minnesota v. Hitchcock*, 185 U.S. 373 (1902).

64. "The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction (*Smith v Krieger*, 643 F. Supp. 2d 1274 (2009))." *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

65. "Because subject-matter jurisdiction involves a court's power to hear a case, it **can never be forfeited or waived**." *U.S. v. Cotton*, 535 U.S. 625 (2002).

66. Just as Defendants have no subject matter jurisdiction to enforce Title 27 Customs Laws, or Title 9 Bankruptcy Laws, so too Defendants have no subject matter jurisdiction of Title 18 "perjury" or "money laundering" statutes.

67. For example, police acknowledged that it had no authority to enforce federal civil immigration laws." *Melendres v. Arpaio*, 2016 9 Dist. Lexis 193081.

68. No part of the criminal jurisdiction of the United States can, consistently with the constitution, be delegated to state tribunals. *Ex Parte Bridges*, 4 F. Cas. 98 (1875).

69. Congress had delegated power to prosecute crimes in name of United States to the United States Attorney General, and such power was exclusive. *Smith v. Krieger* 643 F. Supp. 2d

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

1274 (2009).

70. Criminal statutes can neither be enforced by civil action, (*United States v. Claflin*, 97 U.S. 546, (1878); *United States v. Jourden*, 193 F. 986 (9th Cir. 1912)), nor by private parties. (*Keenan v. McGrath*, 328 F.2d 610 (1964)). Plaintiff is without authority to proceed under these statutes. *Gerbing v ITT Rayonier Inc.*, 332 F. Supp. 309 (1971).

71. Defendants allege Plaintiff committed 18 U.S.C §1621 perjury during her testimony at a Federal Court located in Sacramento, California. As the crime is alleged to have been committed before a United States commissioner, at a place within the Eastern judicial district of this state, the Federal Courts for that district are the only tribunals that have cognizance of the offense and jurisdiction to try Plaintiff. (See, for example, *Ex Parte Bridges*, 4 F.Cas. 98, 1875)).

72. Perjury is an offense against the sovereign whose law is violated by the making of the false oath. The courts of no country or sovereign, execute the penal laws of another. *State v. Kirkpatrick*, 32 Ark. 117 (1877).

73. A witness who gives his testimony… in a case pending in a court… of the United States… is accountable for the truth of his testimony to the United States only; and perjury committed in so testifying is an offence against the public justice of the United States and within the exclusive jurisdiction of the courts of the United States. *In re Loney*, 134 U.S. 372 (1890).

74. Perjury committed in so testifying is an offense against the United States and within the exclusive jurisdiction of its courts and cannot be punished in the courts of the State. *In re Loney*, 134 US 372 (1890).

75. The courts of the State have no jurisdiction to entertain or proceed with a prosecution for

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

14

the offense of perjury committed in a matter pending before the judicial tribunals of the United States. *McIntosh v. Bullard*, <u>95 Ark 227</u> (1910).

76. It is a fundamental right of every citizen of... the United states, to be tried by the tribunals of justice of that sovereign power whose criminal code he has transgressed; and the complement of this rule or axiom is, immunity or exemption from trial or punishment for that offence by any other government or sovereignty. *Ex Parte Bridges*, <u>4 F. Cas. 98</u> (1875).

### 2. <u>Want of Territorial Jurisdiction.</u>

77. Just as Defendants are without jurisdiction to prosecute crimes allegedly committed in Mexico or Canada, so too Defendants are without jurisdiction to prosecute crimes allegedly committed in Federal District Court in Sacramento, California, or in the County of Sacramento, California.

78. For example, the jurisdiction of the Police Department of the City of Los Angeles does not include the City of Beverly Hills. *Schackman v. Arnebergh*, <u>258 F. Supp. 983</u> (C.D. Cal. 1966).

79. 18 U.S.C. §3231 states: "The district courts of the United States shall have original jurisdiction, <u>exclusive</u> of the courts of the States, of all offenses against the laws of the United States."

80. 18 U.S.C. §7(3) states: "Any land reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof."

81. US Eastern District Court, Federal Building, is a place within the special maritime and territorial jurisdiction of the United States, reserved for use by the United States and

under exclusive jurisdiction of the United States, per 18 U.S.C. §7(3), which is beyond the reach of State of California or City of Oakland, California.

82. Jurisdiction is entirely vested either in the state or the nation, and not divided between them. *Barbier v. Connolly*, 113 U.S. 27 (1885).

83. Cities are not sovereign entities, but instead are only agencies of the State. Any power a city has to define and punish crimes exists only because such power has been granted by the state. *U.S. v Wheeler*, 435 U.S. 313 (1978).

84. "In this Republic, there is a dual system of government, national and state. Each within its own domain is supreme, and one of the chief functions of this Court is to preserve the balance between them, protecting each in the powers it possesses and preventing any trespass thereon by the other." *Matter of Heff*, 197 U.S. 488 (1905).

85. "The jurisdiction so conferred upon the national courts cannot be abridged or impaired by any statute of a state." *Barrow v. Kane*, 170 U.S. 100 (1898).

86. "However extensive their power to create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction." *Duchek v. Jacobi*, 646 F.2d 415 (1981).

**3. Jurisdiction is Barred by the Statute of Limitations.**

87. Defendants allege Plaintiff committed an unidentified offense of "reverse money laundering" in 2011 - 2012. This allegation is barred by the statute of limitations.

88. 18 U.S.C. §3282 states: "Offenses not capital. Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within **five years** next after such offense shall have been committed."

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

89. Ordinarily, an offense is complete as soon as every element in the crime occurs, and the statute of limitations begins to run from that date. *Toussie v. United States*, <u>397 U.S. 112</u> (1970).

90. Conducting financial transaction element of crime of money laundering was completed, so that applicable five-year statute of limitations began to run, at time that deposit was initiated by delivery of check to back teller.... *U.S. v. Li*, <u>856 F. Supp. 421</u> (1994).

91. When a general verdict may be based on a **legally inadequate grounds, such as** because of a **statutory time bar**, the verdict should be set aside. *U.S. v. Fuchs*, <u>218 F. 3d 957</u> (9th Cir. 2000).

92. Due Process Clause (5th, 8th Amendments) protects against prejudicial pre-accusation delay... The applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges. *US v. Marion*, <u>404 U.S. 307</u> (1971).

93. Significantly, a statute of limitations reflects a legislative judgment that, after a certain time, **no quantum of evidence is sufficient to convict**. See *United States* v. *Marion*, <u>404 U. S. 307</u>, 322 (1971). And that judgment typically rests, in large part, upon evidentiary concerns - for example, concern that the passage of time has eroded memories or made witnesses or other evidence unavailable. *United States* v. *Kubrick*, <u>444 U. S. 111</u>, 117 (1979); 4 W. LaFave, J. Israel, & N. King, Criminal Procedure § 18.5(a), p. 718 (1999); Wharton, Criminal Pleading and Practice § 316, at 210. Indeed, this Court once described **statutes of limitations as creating "a presumption which renders proof unnecessary."** *Wood* v. *Carpenter*, <u>101 U. S. 135</u>, 139 (1879). Consequently, to resurrect a prosecution after the relevant statute of limitations has expired is to eliminate a

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

currently existing conclusive presumption forbidding prosecution. *Stogner v. California*, 539 U.S. 607 (2003).

94. As we explained in *American Pipe & Construction Co. v. Utah*, 414 U. S. 538, 554 (1974), statutory limitation periods are 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that, even if one has a just claim, it is unjust not to put the adversary on notice to defend within the period of limitation, and that **the right to be free of stale claims in time comes to prevail over the right to prosecute them.**' *Bowen v. City of New York*, 476 U.S. 467 (1986).

95. The Court has indicated that criminal statutes of limitation are to be liberally interpreted in favor of repose. *United States v. Habig*, 390 U. S. 222, 227 (1968). The policies behind civil statutes of limitation are in many ways similar. They "represent a public policy about the privilege to litigate," *Chase Securities Corp. v. Donaldson*, 325 U. S. 304 (1945). *US v. Marion*, 404 U.S. 307 (1971). Statutes of limitation are, by definition, arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay. *Chase Securities Corp. v. Donaldson*, 325 U. S. 304, 314 (1945).

96. The statute of limitations is more than a mere technicality. Statutes of limitations serve the important goal of promoting justice by protecting parties from the prosecution of stale claims, where the loss of evidence, whether by death, disappearance, or fading memories of witnesses, or loss of documents, often makes it impossible to establish the truth. Because of these important policy considerations, the expiration of the statute of

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

limitations will bar a plaintiff's claim "without regard to whether the claim would

otherwise be meritorious." (*U.S. v. Dalm*, <u>494 US 596, 610</u> (1990)). *Roberts v. U.S.*, <u>2010 US Dist. 9 Lexis 12163</u>.

**4. Defendants' Charges Violate the United States Constitution.**

97. Defendants are bound by the U.S. Constitution and cannot ignore it under the pretext they are conducting "administrative proceeding."

98. While States are free to define and punish crimes, "state laws are subject to the overriding provisions of the United States Constitution." *Arthur v. Dunn*, <u>197 Led 2d 255</u> (2017) (citing *Payne* v. *Tennessee*, <u>501 U. S. 808</u>, 824 (1991)).

99. The Constitution of the United States is the supreme law of the land, and **binds every forum**, whether it derives its authority from a state or from the United States. *Cook v. Moffat*, <u>46 U.S. 295</u> (1847).

**a. Charges with No Indictment.**

100.     The Fifth Amendment of the U.S. Constitution states, "No person shall be held to answer for a... infamous crime, unless a presentment or indictment of a Grand Jury."

101.     A crime punishable by imprisonment in a state prison or penitentiary... is an infamous crime within the provision of the Fifth Amendment of the Constitution that "No person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury." *Mackin v. United States*, <u>117 U.S. 348</u> (1886).

102. Felony is, as consequence of punishment imposable thereof, "infamous crime", prosecution for which may only be on presentment by grand jury. *Michel v. Louisiana*, <u>350 U.S. 91</u> (1955).

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

103. Art. VI of the United States Constitution declares that "the Judges in every State shall be bound" by the Federal Constitution, laws, and treaties. *Huffman v. Pursue*, Ltd., <u>420 U.S. 592</u> (1975).

104. Defendants presented charges 18 U.S.C. §1621 (perjury) and B) unidentified charge of "money laundering." These charges are felonies punishable by imprisonment. There was no presentment or indictment of a Grand Jury regarding these charges. Defendants violated the Fifth Amendment of the U.S. Constitution when they forced Plaintiff to answer for these infamous crimes.

**b.   No 'Specific Charge' for Alleged Money Laundering.**

105. Defendant Ausmus alleged Plaintiff committed "reverse money laundering", an unidentified charge. Defendant Ausmus failed to list specific charge Plaintiff allegedly violated.

106. No principle of procedural due process is more clearly established than that **notice of the specific charge**, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused. *Cole v. Arkansas*, <u>333 U.S. 196</u> (1948).

107. It is **axiomatic** that a conviction upon a **charge not made** or upon a charge not tried constitutes a **denial of due process**. *Cole v. Arkansas*, <u>333 U. S. 196</u>, <u>201</u> (1948); *Presnell v. Georgia*, <u>439 U. S. 14</u> (1978).

108. Defendant Ausmus failed to list a specific charge of "reverse money laundering" because no such charge exists. Defendant Ausmus, in effect, created the law and then accused Plaintiff of violating it.

///

<u>COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS</u>

109. It is the **responsibility of the legislature**, not the court" [and not an Oakland law enforcement officer] "**to define a crime**, and ordain its punishment" (*United States* v. *Wiltberger*, 18 U.S. 76 (1820)). And it is "emphatically the **province and duty of the judicial department to say what the law** [including the Constitution] **is**. *Marbury* v. *Madison*, 5 U.S. 137, (1803). *Bond v. U.S.*, 572 U.S. 844 (2014).

110. Furthermore, Defendant Ausmus failed to list or prove any elements of the alleged "reverse money laundering."

111. Defendant Ausmus illegally relied on Plaintiff's immunized testimony of a third party proceeding, and on two journal articles to proclaim herself to be an expert in money laundering and give an expert opinion. Defendant Ausmus provided zero relevant sworn statements or independent evidence. To support her false conclusions, Defendant Ausmus mischaracterized Plaintiff's statements and fabricated evidence.

112. A conviction based upon a record wholly devoid of **any relevant evidence** of a crucial **element of the offense charged** is **constitutionally infirm**. *Jackson v. Virginia*, 443 U.S. 307, 314 (1979).

113. In the early Republic, if an indictment or "**accusation . . . lacked any particular fact** which the laws made **essential** to the punishment," **it was treated as "no accusation"** at all… The Constitution's guarantees cannot mean less today than they did the day they were adopted. *U.S. v. Haymond*, 588 US __ (2019).

**c. Defendants' Proceeding is Quasi-criminal.**

114. At minimum, a government deprivation of life, liberty, or property must be preceded by a notice and an opportunity for a hearing that is "appropriate to the nature of the case" (*Mullance v. Central Hanover Bank*, 339 US 306, 313 (1950)). *Jordan v. Kirkman*, 2008

US Dist. 9 Lexis 110446.

115. "In evaluating whether a state proceeding is **quasi-criminal**, the Supreme Court has considered **whether the civil proceedings are related to criminal laws**. *See, e.g., Huffman, 420 U.S. at 604*" *Choudhry v. Regents of the Univ. of Cal.*, 2016 US Dist 9 Lexis 155745.

116. Citing *Gonzalez v. Waterfront Commission of New York Harbor*, 755 F.3d 176 (3rd Cir. 2014), where a state agency instituted disciplinary proceedings against an employee: "The agency suspected the employee had made false statements, internally investigated the falsity of the statements and, after confirming them to be untruthful, lodged a formal statement of charges against him. The court reasoned that, "[b]y filing this formal Statement of Charges, the Commission—an arm of the State of New Jersey—initiated the administrative disciplinary hearing to sanction [the employee] for his 'wrongful' conduct. **This is a textbook example of a quasi-criminal action.** " *Id.* at 182. *Choudhry v. Regents of the Univ. of Cal.*, 2016 US Dist. 9 Lexis 155745.

117. "The University of California, a state institution, initiated the proceedings. A preliminary investigation preceded the filing of formal charges. The investigation was commenced to sanction Choudhry for alleged misconduct. Choudhry faces—at the conclusion of the process—the possibility of serious sanctions. *See Baffert v. Cal. Horse Racing Bd.* 332 F.3d 613 (9th Cir. 2003) (proceeding against trainer was quasi-criminal "because [his] license was at issue and could be suspended or revoked"). Given these circumstances, the UC proceedings are indeed "akin to a criminal prosecution." *Choudhry v. Regents of the Univ. of Cal.*, 2016 US Dist 9 Lexis 155745.

118. Defendants internally investigated Plaintiff and then lodged a formal statement of

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

charges against her.

119.  Defendants' formal statement of charges against Plaintiff alleges she committed perjury and money laundering.

120.  The disciplinary proceeding by Defendants is designed to sanction (or punish) Plaintiff for conduct California deemed contemptible. If the charges are sustained, the sanction for Plaintiff is termination of her employment and a deprivation of her right to receive disability.

121.  The disciplinary proceedings by Defendants are akin to a criminal prosecution.

122.  [A] prosecutor may not circumvent a person's privilege against self-incrimination by invoking a civil remedy to enforce a criminal statute. *Childs v. McCord*, 420 F. Supp. 428 (1976) (citing *Boyd v. United States*, 116 U.S. 616 (1886)). Upon the imposition of a particular sanction, petitioner has "the right to claim that it is criminal in nature. *Id*, citing *Ullmann v. United States*, 350 U.S. 422 (1956).

123.  Often, the **quasi-criminal proceeding [will be] both in aid of and closely related to criminal statutes."** *PDX N., Inc. v. Asaro-Angelo*, 2019 US Dist. Lexis 126019 (citing *Huffman v. Pursue, Ltd*., 420 U.S. 592, 604 (1975)). "investigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Sprint Commc'ns*, 571 U.S. at 79-80; *see also Gonzalez*, 755 F.3d at 182. While quasi-criminal proceedings may share many attributes with actual criminal prosecutions, they will differ in one key respect: unlike a criminal prosecution, a quasi-criminal proceeding need not occur before the state's judiciary. *PDX N., Inc. v. Asaro-Angelo*, 2019 US Dist. Lexis 126019.

124.  "*Quasi*-criminal" is not an empty label. The classification is in no sense illusory; it has

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

23

reference to the safeguards inherent in the very nature of the offense, the punitive quality that characterizes the proceeding, and the requirements of fundamental fairness and essential justice to the accused. *State v. Laird,* 25 N.J. 298 (1957).

### d. Defendants Violated the Fifth Amendment of the U.S. Constitution.

125. Defendant Ausmus based her investigation on: (1) the trial transcript of Plaintiff's 2018 immunized testimony and on (2) 2019 Plaintiff's compelled statement, all in violation of the Fifth Amendment.

126. Defendant Ausmus knew Plaintiff testified under immunity at trial. In fact, Defendant Ausmus mentioned at least sixteen times throughout her Report of Internal Investigation that Plaintiff had an immunity, concluding guilt and retaliating against Plaintiff's right to remain silent. "It would be fundamentally unfair to attack defendant for invoking their right to remain silent." *Doyle v. Ohio,* 426 U.S. 610 (1976).

127. Plaintiff's immunity was only relevant to Defendant Ausmus' investigation in that she could not use the trial transcript of Plaintiff's 2018 immunized testimony.

128. Not only Defendant Ausmus attacked Plaintiff for invoking her right to remain silent, but she also used Plaintiff's immunized testimony in violation of the law.

129. "The government…**cannot use the immunized testimony or any evidence derived from it either directly or indirectly.**" *U.S. v. Harris,* 973 F.2d 333 (1992).

130. The Fifth amendment prevents the Government from using immunized testimony either **directly or indirectly.** See, e.g., *Braswell v. U.S.,* 487 US 99, 108 (1988). **Government is required to prove "that all of the evidence it proposes to use was derived from legitimate independent source"** (*Kastigar v. US,* 406 U.S. 461 (1972). Moreover, "hearing must make specific findings on the independent nature of this proposed

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

allegedly tainted evidence" (*US v. North*, <u>910 F.2d 843</u> (1990)) *U.S. v. Tallia*, <u>1991 U.S. Dist. DC Lexis 6654</u>.

131. The [immunity] statute "prohibits the prosecutorial authorities from using the compelled testimony in *any* respect," (*Kastigar v. US*, <u>406 US 441, 453</u>) (emphasis in original), and that it "provides a sweeping proscription of any use, direct or indirect, of the compelled testimony and any information derived therefrom," *id.*, 460. *Pillsbury Co. v. Conboy*, <u>459 U.S. 248</u> (1983).

132. "*Kastigar* [*v. United States*, <u>406 U.S. 441</u> (1972)] does not prohibit simply "a whole lot of use," or "excessive use," or "primary use" of compelled testimony. It prohibits "*any* use," direct or indirect. From a prosecutor's standpoint, an unhappy byproduct of the Fifth Amendment is that *Kastigar* may very well require a trial within a trial if such a proceeding is necessary for the Court to determine whether or not the government has in any fashion <u>used compelled testimony</u> to indict or convict a defendant. (*United States v. North*, <u>910 F.2d 843, 861</u> (D.C.Cir.1990))." *U.S. v. Harris*, <u>780 F. Supp. 385</u> (N.D.W. Va. 1991).

## *Defendant Ausmus Illegally Compelled Plaintiff to Provide a Statement.*

133. Knowing that Plaintiff had a Federal grant of immunity at the Federal Trial, Defendant Ausmus nevertheless compelled Plaintiff to provide a statement regarding her testimony at the Federal trial.

134. The constitutional privilege against self-incrimination protects a state witness against incrimination under federal as well as state law and a federal witness against incrimination under state as well as federal law. *Murphy v. Waterfront Comm'n*, <u>378 U.S. 52, 78</u> (1964).

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

135. "Due process of law," is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, **administrative**, or executive in its nature. *Stuart v. Palmer*, <u>74 N.Y. 183</u> (1878) (citing *Weimer* v. *Brueinbury*, <u>30 Mich., 201</u>).

136. The provision of the Constitution that **"no person shall be compelled in any criminal case to be a witness against himself" is applicable not only to crimes, but also to *quasi*-criminal and penal proceedings.** *Gompers v. Bucks Stove & Range Co.*, <u>221 U.S. 418</u> (1911) (citing *Boyd v. United States*, <u>116 U. S. 616</u> (1886)).

137. To determine whether [person] was entitled to assert a Fifth Amendment right not to take the stand at this administrative hearing, we must decide whether the suspension "was intended as punishment." *United States v. One Assortment of 89 Firearms*, <u>465 U.S. 354, 362</u> (1984). If so, the suspension hearing was "essentially criminal in character," and the normal guarantees of a criminal trial, including the privilege against self-incrimination, apply to the hearing. *Id.* " *Roach v. the National Transportation Safety Board*, <u>804 F.2d 1147</u> (1986).

138. A "criminal case," for purposes of the invocation of the Fifth Amendment privilege, is one which may result in sanctions being imposed upon a person as a result of his conduct being adjudged violative of the criminal law. *In Re Daley*, <u>549 F.2d 469</u> (1977).

***Plaintiff's Immunized Testimony in 2018 and Compelled Statement in 2019 must be wholly disregarded.***

139. Defendant Ausmus used information derived solely from the trial transcript of Plaintiff's 2018 immunized testimony and Plaintiff's illegally compelled 2019 statement to conclude Plaintiff committed 18 USC 1621 "perjury", and unidentified charge of "money

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

laundering."

140. Despite "investigating" for over a year, Defendant Ausmus failed to provide <u>any</u> <u>evidence</u> derived <u>independently</u> to support these allegations.

141. "Our accusatory system of criminal justice demands that the government seeking to punish an individual **produce the evidence against him by its own independent labor, rather than the cruel, simple expedient way of compelling it from his own mouth.**" *U.S. v. Dionisio*, <u>410 U.S. 1</u> (1973), citing *Miranda v. Arizona*, <u>384 U.S. 436</u> (1966).

142. When coercion, impermissible under the Fifth Amendment, has actually produced an involuntary statement, we have invariably held that the fruits of that unconstitutional coercion may not be used to prosecute the individual involved for crime. *E.g., Rochin v. California*, <u>342 U. S. 165</u> (1952). *Williams v. U.S.*, <u>401 U.S. 646</u> (1971).

143. **The compelled testimony so taken, and the evidence thereby adducted may not and will not be considered but will be wholly disregarded.** *U.S. v. Solomon* <u>1944 US Dist. Lexis 5264</u>.

144. Supervisory Defendants signed and approved Defendant Ausmus' Report of Internal Investigation and recommended sanction of termination of Plaintiff.

145. All Defendants violated the Fifth Amendment. None of the information derived from the transcript and compelled statement could be used to punish Plaintiff.

146. Additionally, prior to taking Plaintiff's compelled statement, Defendant Ausmus was informed that Plaintiff was being treated for her serious work injury and was on medication that affects her memory and ability to focus. Defendant Ausmus was provided a note signed by Plaintiff's physician stating the Plaintiff was on medication that can affect her cognitive function.

<u>COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS</u>

27

147. In turn, Defendant Ausmus questioned Plaintiff regarding events that allegedly happened eight years ago. Defendant Ausmus then criticized Plaintiff for inability to remember all events and concluded Plaintiff was not credible.

148. Statements made while in hospital bed were held involuntary and inadmissible. "Statements [that] were not the product of [defendant's] free and rational choice" cannot be used in any way against a defendant at his trial. *Mincey v. Arizona*, 437 U.S. 385 (1978).

149. Defendants may argue the use of trial transcript of immunized testimony is permissible since they are investigating Plaintiff for perjury. As stated above, Defendants had no subject matter or territorial jurisdiction to investigate a federal crime of perjury. Additionally, Defendants failed to prove elements of perjury [see below].

150. Furthermore, "A witness' truthful testimony, given under a grant of immunity, may not be used to prove either a later perjury, *Cameron v. United States*, 231 U.S. 710, 718-24 (1914), or, as here, an earlier perjury, *United States v. Alter*, 482 F.2d 1016, 1028 (9th Cir. 1973)." *U.S. v. Berardelli*, 565 F.2d 24 (2d Cir. 1977).

151. The Court has made clear that the truth or falsity of a statement is not the determining factor in the decision whether or not to exclude it. *Jackson v. Denno*, 378 U. S. 368 (1964). Thus, a State which has obtained a coerced or involuntary statement cannot argue for its admissibility on the ground that other evidence demonstrates its truthfulness (or untruthfulness). *Michigan v. Tucker*, 417 U.S. 433 (1974).

152. *People v. Walker*, 192 N.E.2d 819 (1963) held that the testimony given under the immunity order could not be used to show inconsistencies with her grand jury testimony.

153. The fact that a witness may have made an earlier inconsistent statement, or that other

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

witnesses have conflicting recollection of events, does not establish that the testimony offered at trial was false. *U.S. v. Croft*, 124 F.3d 1109 (1996).

### e. Defendants Violated the Sixth Amendment of the U.S. Constitution.

154. The Sixth Amendment's Confrontation Clause applies… to criminal and quasi-criminal matters. *Plys v. Ang*, 589 B.R. 165 (2018).

155. Not only the trial transcript used by Defendant Ausmus contained Plaintiff's immunized testimony, but also the trial transcript was a record of a third party criminal prosecution.

156. Defendant Ausmus used a record of one criminal prosecution as a proof of the existence of fact in her allegations against Plaintiff.

157. Defendant Ausmus failed to confront Plaintiff with any relevant witnesses to establish the facts alleged in her investigation. Rather, Defendant Ausmus only confronted Plaintiff with the record of another criminal prosecution. The evidence at that criminal prosecution was not given in Plaintiff's presence. Nor was Plaintiff entitled to be represented by counsel at that criminal prosecution.

158. This is identical to the case of *Kirby v. U.S.*, 174 US 47, 55 (1899): "One of the fundamental guaranties of life and liberty is found in the Sixth Amendment of the constitution of the United States, which provides that "in all criminal prosecutions, the accused shall . . . be confronted with the witnesses against him." Instead of confronting [defendant] with witnesses to establish the vital fact that the property alleged to have been received by him had been stolen from the United States, he was confronted only with the record of another criminal prosecution, with which he had no connection, and the evidence in which was not given in his presence." *Id.*

159. **The record of the proof of a vital fact in one prosecution could not be taken as**

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

29

proof in the other of the existence of the same fact. *Kirby, at 55.*

160. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. *E.g., ICC v. Louisville & N. R. Co.,* 227 U. S. 88, (1913); *Willner v. Committee on Character & Fitness,* 373 U. S. 96 (1963). What we said in *Greene v. McElroy,* 360 U. S. 474, 496-497 (1959), is particularly pertinent here: "Certain principles have remained relatively immutable in our jurisprudence. ... We have formalized these protections in the **requirements of confrontation and cross-examination.** They have ancient roots. They find expression in the Sixth Amendment. . . . This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where **administrative** . . . actions were under scrutiny."" *Goldberg v. Kelly,* 397 U.S. 254, 270 (1970).

161. Defendant Ausmus' investigation heavily relied on the transcript of a third party proceeding. Defendant Ausmus provided zero sworn witness statements.

162. The Confrontation Clause is violated when "hearsay evidence [is] admitted as substantive evidence against the defendant," *Tennessee v. Street,* 471 U. S. 409, 413 (1985). ... A major reason underlying the Constitutional Confrontation Clause is to give a defendant charged with a crime an opportunity to cross-examine the witness against him. *Kentucky v. Stincer,* 482 U.S. 730, 737 (1987).

163. A fact which can be primarily established only by witnesses cannot be proved against an accused . . . except by witnesses who confront him at the trial, upon whom he can look while being tried, whom he is entitled to cross-examine, and whose testimony he may impeach in every mode authorized. *Boswell v. Hedgpeth,* 2012 US Dist Lexis 49738

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

(citing *Kirby v. United States*, <u>174 U.S. 47, 55</u> (1899)).

164. "In almost every setting where important decisions turn on questions of fact, due process requires an **opportunity to confront and cross-examine adverse witnesses.**" *Goldberg v. Kelly*, <u>397 U.S. 254, 269</u> (1970). *Cinapian v. Holder*, <u>567 F.3d 1067</u> (9th Cir. 2009).

165. A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment. *Willner v. Committee on Character*, <u>373 U.S. 96, 102</u> (1963). We have emphasized in recent years that procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood. *See Greene v. McElroy*, <u>360 U. S. 474</u> (1959). *Willner*, at 103.

5. **The Charges by Defendants are "Totally Devoid of Evidentiary Support."**

166. Defendants proceeded with Plaintiff's prosecution while knowing (in addition to 1-4 above) that Defendants could not prove <u>all</u> elements of alleged charges.

*Defendants did not address elements of proof of 18 U.S.C. §1621 Perjury.*

167. "The government must prove that, among other things defendant testified <u>falsely</u>, and the falsity was <u>material</u>." *Modern Jury Instructions*, Vol. 2 §48.01 Perjury 18 USC 1621.

168. "The <u>falsity</u> of the defendant's statements must be established by testimony of <u>two</u> <u>witnesses</u> or one witness and other independent evidence." *Modern Jury Instructions*, Vol. 2 §48.09.

169. "The general rule in prosecution for perjury is that uncorroborated oath of <u>one witness</u> <u>is not enough</u> to establish the <u>falsity</u> of the testimony of the accused set forth in the indictment." *Hammer v. United States*, <u>271 U.S. 620</u> (1926).

170. "The uncorroborated oath of <u>one witness is not enough</u> to establish the <u>falsity</u> of the

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

testimony of the accused." *Dunn v. United States*, <u>442 U.S. 100</u> (1979).

171. The fact that a witness may have made an earlier inconsistent statement, or that other witnesses have conflicting recollection of events, does not establish that the testimony offered at trial was false. *U.S. v. Croft*, <u>124 F3d 1109</u> (1996).

172. After "investigating" for over one year, Defendant Ausmus produced zero sworn testimonies or independent evidence to corroborate allegations of perjury.

173. Moreover, Defendants could not possibly establish materiality.

174. Government must establish the defendant made false statement <u>material</u> to the issues under inquiry by the [name of the agency or tribunal]. *Modern Jury Instructions*, Vol. 2, Perjury 18 USC 1621.

175. In a perjury case, the government... must offer evidence from the prior trial to show that the defendant's statements were <u>material</u>; simply offering the allegedly false statement itself is not enough. See *United States v. Dipp*, <u>581 F.2d 1323</u>, 1328 (9th Cir.1978); see also *United States v. Damato*, <u>554 F.2d 1371</u>, 1373 (5th Cir.1977) (holding that the judge did not have sufficient basis to determine <u>materiality</u> where the entire transcript of the prior proceeding was not received by the court). *U.S. v. Leon-Reyes*, <u>177 F.3d 816</u> (9th Cir. 1999).

176. Defendants presented no evidence that it ever possessed or evaluated the entire trial transcript. In fact, during Plaintiff's compelled interview, Defendant Ausmus admitted she does not have the entire transcript of the proceeding, "I only have one day of testimony out of so many, so I want you to bring it into context for me."

## *Defendants did not address elements of proof of "money laundering."*

177. Defendants further presented an unidentified charge of "money laundering".

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

Defendants could not possibly prove all elements of money laundering.

178. *Modern Jury Instructions*, Vol. 3, §74.6 Money Laundering 18 USC 1957 provide: The defendant can be found guilty of the money laundering offense only if ALL the following are proved beyond a reasonable doubt:

2) the defendant knew the [monetary] transactions… were the proceeds of some criminal activity

3) the property had a value of more than $10,000

4) the property was in fact proceeds of [describe the specified unlawful activity alleged in the indictment].

179. Defendants did not prove the checks in question were "in fact proceeds of specified unlawful activity alleged in the indictment" (#4). There was no indictment of "specified unlawful activity". Neither the checks in question were over $10,000 as required by #3.

180. When the state of defendant's knowledge of the facts has been determined or is undisputed, then his subjective belief in the legal validity of his claim is irrelevant and the only question is whether, based upon his knowledge, his action was objectively reasonable. *Leonardini v. Shell Oil Company*, 216 Cal App 3d 554, 570 (1989).

181. The decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing. *Ohio Bell Tel. Co. v. PUC*, 301 U. S. 292 (1937); *United States v. Abilene & S. R. Co.*, 265 U. S. 274, 265 U. S. 288-289 (1924). … And, of course, an impartial decisionmaker is essential. *Cf. In re Murchison*, 349 U. S. 133 (1955); *Wong Yang Sung v. McGrath*, 339 U. S. 33, 339 U. S. 45-46 (1950). *Goldberg v. Kelly*, 397 U.S. 254 (1970).

182. Sufficiency of evidence has to be assessed against elements of charged crime.

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

33

*Musacchio v. United States*, 577 U.S. ___ (2016). US Supreme Court interpreted **"totally devoid of evidentiary support" rule to mean that Due Process Clause of the Fourteenth Amendment is violated when government failed to prove a basic element of the crime in question.** *See Johnson v. Florida*, 20 Led 2d 838 (1968), *Thompson v. City of Louisville*, 362 U.S. 199 (1960), *Vachon v. New Hampshire*, 38 Led 2d 666 (1974), *Fiore v. White*, 149 LEd. 2d 629 (2001), *Jackson v. Virginia*, 61 LEd 2d 560 (1979).

183. A conviction based on insufficient evidence deprives a petitioner of the right to due process under the Fourteenth Amendment. *Alarcon v. Stainer*, 2015 US Dist Lexis 75938 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

184. It is reasonable to demand that each charge that a police officer elects to lodge against the accused be supported by probable cause. Otherwise, police officers would be free to tack a variety of baseless charges on to one valid charge with no risk of being held accountable for their excess. *Garvais v. U.S.*, 1010 U.S. Dist. Lexis 13351 (citing *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682-83 (2007)).

185. Uncorroborated hearsay untested by cross-examination does not, by itself, constitute "substantial evidence." *See Consolidated Edison Co. v. NLRB*, 305 U. S. 197, 230 (1938). *Richardson v. Perales*, 402 U.S. 389 (1971). **Assurance of a desirable flexibility in administrative procedure does not go so far as to justify orders without a basis in evidence having rational probative force. Mere uncorroborated hearsay or rumor does not constitute substantial evidence.** *Consolidated Edison Co v. NLRB*, 305 U.S. 197, 230 (1938).

186. Government officials performing discretionary functions [e.g. law enforcement

officers] generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

187. Defendant Ausmus violated Due Process Clause of the Fourteenth Amendment because she failed to prove all elements of the charged crimes of "perjury" and "money laundering." Defendant Ausmus also violated Confrontation Clause of the Sixth Amendment because she relied on uncorroborated hearsay untested by cross-examination as substantial evidence. Defendant Ausmus violated clearly established constitutional rights of Plaintiff and therefore is not shielded from liability for civil damages.

188. Finally, Defendant Ausmus failed to prove Plaintiff had a vicious will in any of the alleged charges. To constitute any crime there must first be a "vicious will". *Morissette v. U.S.*, 342 U.S. 246 (1952).

6. **Criminal Statutes Cannot be Enforced by Civil Action.**

189. Even if Defendants' allegations were not quasi-criminal, Plaintiff still has a right to civil jury trial on disputes of over $20, per the Seventh Amendment of the U.S. Constitution.

190. If the proceeding is civil, Defendants may not rely on criminal statutes. "Criminal statutes can neither be enforced by civil action, *United States v. Claflin*, 97 U.S. 546, (1878); *United States v. Jourden*, 193 F. 986 (9th Cir. 1912), nor by private parties. *Keenan v. McGrath*, 328 F.2d 610 (1st Cir. 1964). Plaintiff is without authority to proceed under these statutes." *Gerbing v ITT Rayonier Inc.*, 332 F. Supp. 309 (1971).

7. **Defendants Violated Public Safety Officers Procedural Bill of Rights Govt. Cal. Govt. Code § 3304(d).**

191. Defendants presented charges against Plaintiff after over one year of limitation period.

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

Defendants initiated the investigation on August 24, 2018. Defendants provided Plaintiff with the results of their investigation on October 2, 2019, which is beyond the one-year statute of limitations.

192. The FBI was "evaluation", not an investigation so the exceptions to Cal. Govt. Code § 3304(d) do not apply. Even if the referral to the FBI was considered an investigation for tolling purposes, the FBI did not investigate "disrepute to department" allegations.

193. A state statute can give rise to federally protected due process interests. *Groten v. California,* 251 F.3d 844, 850 (9th Cir.2001). State statutes providing for particular procedures may create entitlements protected by due process…. [I]f the procedural requirements were intended to operate as a "significant substantive restriction" on the agency's actions, a property interest may be created. *Id. San Joaquin Deputy Sheriffs' Ass'n v. Cnty. of San Joaquin,* 898 F. Supp. 2d 1177 (2012).

194. Procedural Due Process right at issue here are those under Public Safety Officers Procedural Bill of Rights, Cal. Gov. Code § 3300.

195. Federal Court has supplemental jurisdiction over claims under POBRA. *Jordan v. Kirkman,* 2008 U.S. Dist. Lexis 110446.

**8. Violation of OPD Internal Affairs Investigations Policies.**

196. OPD has a policy and procedure manual Defendants are required to follow. Defendants did not follow their own procedures.

197. "The Internal Affairs Division (IAD) has a longstanding tradition of conducting fair and objective investigation of misconduct allegations and policy failures." (Internal Affairs Policy and Procedure Manual, p. ii)

198. IAD Investigator responsibilities: "Utilized accredited and approved investigative and

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

interview techniques while <u>conducting objective, timely, and professional investigations</u> in accordance with the provisions of TB V-T.1, Internal Investigation Procedures." Internal Affairs Policy and Procedure Manual, p. 4).

199. "Investigators shall conduct a <u>thorough, impartial, fact-finding investigation</u>; take recorded <u>statements from all relevant persons</u>; gather, preserve, and examine physical evidence; and collect other information pertinent to the investigation." (Internal Investigation Procedure Manual, V-T.1., p.4).

200. Defendant Ausmus failed to conduct an objective and professional investigation. As stated below, she mischaracterized Plaintiff's statement, omitted evidence in order to mislead and provided misleading evidence. She failed to take statements from all relevant persons. Defendant Ausmus provided zero relevant sworn testimony. On multiple occasions Defendant Ausmus showed her bias against Plaintiff and concluded guilt based on Plaintiff's grant of immunity.

201. Subject Interviews. "Provide the member with a summary of the complaint as documented on the Complainant Investigation Report (CIR) prior to any interviews." (Internal Investigation Procedure Manual, V-T.1., p. 15).

202. Defendant Ausmus did not provide Plaintiff with a summary of the complaint prior to her interview.

203. Investigation Integrity and Confidentiality. "<u>All investigators shall gather, analyze and include exculpatory evidence</u> for consideration as part of the adjudication process." (Internal Investigation Procedure Manual, V-T.1., p. 18).

204. Cal. PC 135.5 (1998) provides: "Any person who knowingly alters, tampers with, conceals or destroys relevant evidence in any disciplinary proceeding against a public

safety officer, for the purpose of harming the officer, is guilty of a misdemeanor."

205. As stated above, Defendants deliberately excluded exculpatory evidence from their investigation and refused to provide it after Plaintiff requested it on five different occasions.

206. "Interviews shall be transcribed at the request of the subject of the investigation." (Internal Investigation Procedure Manual, V-T.1., p. 11). On November 24, 2019, Plaintiff requested Defendants to provide her with her transcribed interview. Defendants ignored Plaintiff's request. Defendant Ausmus claimed being harassed by Plaintiff and Defendants threatened Plaintiff with a disciplinary proceeding.

### Bad Faith – Conclusion

207. Defendants fragrantly exceeded their powers under the guise of administrative action.

208. Where an act of an official plainly falls outside of the scope of his authority, he does not make that act legal by doing it and then invoking the doctrine of <u>administrative construction</u> to cover it. *Joint Anti-Fascist Refugee Committee v. McGrath*, <u>341 U.S. 123, 136</u> (1951). **The doctrine of administrative construction never has been carried so far as to permit administrative discretion to run riot.** *Id, at 138.*

209. "This Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers. *Leedom v. Kyne*, <u>358 U.S. 184</u> (1958). If [government official did exceed his powers] his actions would not constitute exercises of his <u>administrative</u> discretion, and in such circumstances as those before us, judicial relief from this illegality would be advisable." *Id.*

210. No one ought to be "charged with a crime, exposed to the danger of a conviction, and subjected to the expense, vexation, and ignominy of a public trial merely for the

<u>COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS</u>

gratification of another's malice or ill will." *Peasley v. Puget Sound Tug & Barge Co.,* 13

Wn.2d 485, 496-97 (1942). *Garvais v. U.S.,* 1010 U.S. Dist. Lexis 13351.

### Claims for Relief

211. Where a meaningful pre-deprivation hearing is practicable, post-deprivation remedies

do not provide due process. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436 (1982).

Once an employee is terminated without the process he is due, the constitutional

deprivation is complete. *Schultz v. Baumgart,* 738 F.2d 231, 237-8 (7th Cir. 1984). Thus

the availability of post-deprivation procedures cannot "cure" the due process violation.

*Barberic v. City of Hawthorne,* 669 F. Supp. 985 (C.D. Cal. 1987).

212. A claimant is not required to exhaust administrative remedies as a prerequisite to

bringing an action pursuant to 42 U.S.C. § 1983. *Patsy v. Board of Regents of State of*

*Florida,* 457 U.S. 496 (1982).

213. A [42 U.S.C.] § 1983 plaintiff does not have to exhaust state remedies. *Barberic v. City*

*of Hawthorne,* 669 F. Supp. 985 (C.D. Cal. 1987) (citing *Patsy v. Board of Regents of*

*State of Florida,* 457 U.S. 496 (1982)).

### FIRST CLAIM FOR RELIEF:

#### 42 U.S.C. § 1983 - Deliberate Fabrication of Evidence

#### (Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)

214.    Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

215.    Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

216.    Acting under color of law, Defendants individually and in concert, conspired to

produce a false and misleading investigative report.

217.    The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a

### COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

state official. **Deliberate fabrication can be shown by direct evidence,** for example, when "**an interviewer ... deliberately mischaracterizes witness statements in her investigative report.**" *Costanich v. Dep't of Soc. & Health Servs.,* 627 F.3d 1101, 1111 (9th Cir. 2010). In cases involving direct evidence, the investigator's knowledge or reason to know of the plaintiff's innocence need not be proved. *Id.*

218.      "an interviewer who deliberately mischaracterizes witness statements in her investigative report ... commits a constitutional violation." *Costanich,* 627 F.3d at 1111.

219.      On numerous occasions, Defendant Ausmus deliberately mischaracterized Plaintiff's statement. Some of the few examples of Defendant Ausmus' falsification of evidence include:

-      Defendant Ausmus wrote that Plaintiff "admitted to committing perjury". (Report of Internal Investigation, p. 41). This is false and absurd. Plaintiff never admitted to committing perjury. "[N]o sensible concept of ordered liberty is consistent with law enforcement cooking up its own evidence." *Halsey v. Pfeiffer,* 750 F.3d 273, 292-93 (3d Cir. 2014).

-      Defendant Ausmus wrote that Plaintiff "did not have any schedules, nor did she have any homework." (Report of Internal Investigation, p. 45). This is untrue. Defendant Ausmus never asked Plaintiff if there were any schedules or homework. Plaintiff actually told Defendant Ausmus there was homework.

-      Defendant Ausmus wrote, "[Plaintiff] stated in her interview to IAD she would immediately write a check back.... As documented above, [Plaintiff] did not immediately write check back.... There is a preponderance of evidence to show [Plaintiff] was involved in money laundering." (Report of Internal Investigation, p.

48). This is untrue. Plaintiff did not say she would "immediately" write check back. Again, Defendant Ausmus deliberately mischaracterized Plaintiff's statement.

- Defendant Ausmus wrote, "[Plaintiff] explained in Ukraine once you have obtained your degree, you are not required to accredit or <u>obtain continuing education to continue teaching</u>." (Report of Internal Investigation, p. 46). This is untrue. Defendant Ausmus never asked Plaintiff about "continuing education to continue teaching." Plaintiff only said, "once you get a degree you can go teach at the school," and "once you get a degree you are assigned to a school." This is supported by what Defendant Ausmus wrote earlier in her report, "The holders of Bachelor degrees may work at primary schools at well. Secondary school teachers [grades 5-9 and 10-11] must hold a bachelor's degree." (Report of Internal Investigation, p. 40).

- Defendant Ausmus mischaracterized Plaintiff's statement and wrote, "I researched requirements to teach in Ukraine, and … teachers are required to go through an attestation program <u>every five years</u>." Defendant Ausmus then concluded Plaintiff was not credible. There was no questioning regarding requirements to continue teaching years after obtaining the degree.

220.     Defendant Ausmus deliberately <u>omitted evidence</u> in order to mislead. For example:

- Defendant Ausmus wrote, "Based on [Plaintiff's] inability to explain or show <u>anything</u> in which she did teach the English lessons... there is a preponderance of evidence to suggest [Plaintiff] lied during her statement." (Report of Internal Investigation, p. 45). This is absurd and false. Defendant Ausmus deliberately omitted that Plaintiff holds a Bachelor of Arts in Teaching English as a foreign language;

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

41

Plaintiff had tutored English one-on-one before; taught English in High school in Ukraine; was a teacher's assistant in California for foreign students; Defendant Ausmus was provided with text books Plaintiff used to teach English; location and duration of classes; the subjects taught and how the instruction was provided.

221.    "With regard to omissions.... a facially sufficient affidavit is still subject to challenge if it includes "omissions that are *designed to mislead,* or that are made in *reckless disregard of whether they would mislead,* the magistrate." *United States v. Colkley, 899 F.2d 297, 300 (4th Cir. 1990)* (emphasis in original)." *Evans v. City of Durham,* 2011 US Dist. Lexis 156711.

222.    Additionally, Defendant Ausmus deliberately supplied misleading information. For example:

- Defendant Ausmus fabricated "bank rules" and wrote in her report, "Most banks make it a rule not to allow cash to be placed into a safety deposit box because the money would not be covered by the FDIC. This rule is intended to protect the safety deposit box owner." (Report of Internal Investigation, p. 45). This is not true. There are no laws about keeping cash in a safety deposit box. Apart from her own opinion, Defendant Ausmus failed to provide any facts supporting these "bank rules."

- Defendant Ausmus wrote: "I reviewed several documents and the court transcripts to understand how money laundering works: Yuliya G. Zabyelina, (2015), "Reverse money laundering in Russia: Clean cash for dirty ends," Journal of Money Laundering Control, Vol. 18 Iss 2 pp. 201-219. The Money Laundering Risk Posed by Lawyer Trust Accounts, The Fraud Examiner. Of the articles, I reviewed the two cited above gave better definitions of money laundering and how it is done." (Report

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

of Internal Investigation, p. 47).

223.     Defendant Ausmus did not bother to look up actual elements of the crime "money laundering." Instead, she made herself an <u>expert in money laundering</u> based on two articles and then proceeded to provide expert opinions in her Report. When Plaintiff asked that Defendant Ausmus signed her Report under penalty of perjury, Defendant Ausmus claimed being harassed and threatened Plaintiff with disciplinary proceedings.

224.     "Those who deliberately supply misleading information to those who prosecute that influences the decision to prosecute cannot escape liability by pointing to decisions of prosecutors." *Garvais v. U.S.*, <u>1010 US Dist. Lexis 13351</u> (citing *Jones v. City of Chicago*, <u>856 F.2d 985</u> (7th Cir. 1988)).

225.     Defendant Ausmus' misrepresentations are not trivial or without consequence. They cannot be explained as carelessness or a mistake of tone. Defendant Ausmus falsely reported and attributed to Plaintiff statements which Plaintiff simply never made. Defendant Ausmus omitted evidence in order to mislead and supplied misleading information. Due to the fabricated evidence, Plaintiff was accused of serious charges and deprived of her liberty rights.

226.     Supervisory Defendants signed Defendant Ausmus' report, approving and ratifying her conduct.

227.     Individuals possess a 14th am Due Process right not to be deprived of liberty as a result of the deliberate fabrication of evidence by a government officer acting in an investigating capacity. Specifically recognized a 14th Am right in the context of pre-trial proceedings. *Evans v. City of Durham*, <u>2011 US Dist. Lexis 156711</u>.

228.     As a direct and foreseeable consequence of Defendants' acts and omissions,

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

43

Plaintiff was deprived of her rights under the U.S. Constitution.

229.     As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm to her reputation.

## SECOND CLAIM FOR RELIEF:

## 42 U.S.C. § 1983 – Destruction and/or Hiding of Exculpatory Evidence

## (Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)

230.     Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

231.     Defendant Ausmus indicated that she was advised by Captain Millington (Defendant Millington) that "the FBI was maybe conducting a criminal investigation of Plaintiff." Defendant Ausmus then wrote that on January 24, 2019, she was advised "the FBI was not going to investigate [Plaintiff] for her alleged criminal activity." (Report of Internal Investigation, p. 2-3). Defendant Ausmus later wrote, "On 19 Sep 18, the FBI advised the Oakland Police Department they were investigating [Plaintiff] for possible criminal involvement." (Report of Internal Investigation, p. 52),

232.     Defendants failed to include this communication in the "Chronological Log" of the investigation.

233.     On five different occasions Plaintiff requested Defendants to provide all the *Brady* materials, including any statements given to or received from the FBI regarding these allegations. Defendant Ausmus gave a vague answer that there was no declination letter. Defendants ignored Plaintiff's further requests.

234.     Defendants acted without probable cause and procured groundless charges against Plaintiff based upon concealment of exculpatory evidence and fabricating inculpatory

evidence.

235.     As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

236.     As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm to her reputation.

237.     A *Brady* due process claim makes the non-disclosure of exculpatory evidence a violation of the *Due Process Clause* irrespective of the good or bad faith of the nondisclosing officer in a criminal case; bad faith is not required to establish a civil *Brady* violation. Under *Daniels v. Williams, 474 U.S. 327, 328 (1986)*, Plaintiff must establish that Defendants deliberately withheld exculpatory evidence from Plaintiff; not that the withholding was in bad faith; deliberate, purposeful withholding of material evidence by law enforcement officers is sufficiently outrageous to support an inference of bad faith, even if such a state of mind is not specifically required as a separate element of this constitutional tort. *Stoll v County of Kern*, 2008 US Dist. Lexis 86535.

### THIRD CLAIM FOR RELIEF

### 42 U.S.C. § 1985 - Obstruction of Justice and Conspiracy

### (Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)

238.     Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

239.     Beginning August 24, 2018, defendants acting individually and in concert, engaged in acts that attempted to and did prevent, obstruct, impede, and hinder public or legal justice in the State of California.

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

45

240.    Acting under color of law, Defendants engaged in this obstruction by conspiring to manufacture and by manufacturing false and misleading investigative report with the knowledge that this report would be used to advance and perpetuate the quasi-criminal process against Plaintiff.

241.    Defendants engaged in this obstruction by continuing investigation knowing they have no subject matter or territorial jurisdiction over the charges; the charges were barred by statute of limitations; totally devoid of evidentiary support; and in violation of the U.S. Constitution.

242.    Defendants engaged in this obstruction by continuing investigation of the allegations discovered to lack of probable cause.

243.    Defendants engaged in this obstruction by deliberately fabricating evidence.

244.    Defendants engaged in this obstruction by deliberately withholding exculpatory evidence from Plaintiff.

245.    Defendant Ausmus acted in an investigatory capacity; Supervisory Defendants acted as Ausmus' supervisors and ratified her conduct. Qualified immunity would not apply to these investigatory activities.

246.    As a direct and foreseeable consequence of Defendants' conduct, Plaintiff was unreasonably and unlawfully subjected to quasi-criminal prosecution.

247.    As a direct and foreseeable consequence of being subjected to quasi-criminal prosecution, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, loss of property, and irreparable harm to her reputation.

248.    As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

to the U.S. Constitution.

249.     As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm to her reputation.

250.     "Obstruction of justice is ... an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice." *Jones v. City of Durham,* 183 N.C. App. 57, 59 (2007*).* This tort would include, for example, claims that "Defendants attempted to impede the legal justice system through [a] false affidavit," *Jackson v. Blue Dolphin Commc'ns of N.C., L.L.C.,* 226 F. Supp. 2d 785, 794 (W.D.N.C. 2002), and claims that Defendants "conspired to impede [the] investigation of this case by destroying . . . records and by falsifying and fabricating records." *Henry v. Deen,* 310 N.C. 75, 86 (1984); see also *Reed v. Buckeye Fire Equip.,* 241 Fed. Appx. 917, 928 (4th Cir. 2007).

## FOURTH CLAIM FOR RELIEF

## 42 U.S.C. § 1983 - Retaliation for First Amendment Speech

## (Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)

251.     Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

252.     On June 14, 2018, Plaintiff was subpoenaed to testify at the United States District Court, Eastern District of California.

253.     Plaintiff testified as a witness regarding events that allegedly occurred before she was employed with the OPD. Plaintiff's testimony was not part of her job with the OPD and she was not testifying in her capacity as an OPD officer. Neither she testified in a uniform nor had any OPD insignia.

254.     The trial judge held that Plaintiff's information and testimony she would give "is

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

necessary to the public interest" (Trial Transcript, p. 889, 23-25).

255.     Plaintiff testified as a citizen on a matter of public concern and not in furtherance of her duties as a police officer. Plaintiff's testimony is a constitutionally protected speech.

256.     Acting under color of law, Defendants took an adverse employment action against Plaintiff. [facts]

257.     Plaintiff's testimony was a substantial or motivating factor in the adverse action by Defendants.

258.     As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

259.     As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm to her reputation.

260.     The First Amendment protects a public employee's right to speak as a citizen on matters of public concern, with some limitations. *Connick v. Myers,* 461 U.S. 138 (1983). The threshold inquiry in any Section 1983 First Amendment case is "whether the plaintiff was speaking as a citizen on a matter of public concern, or whether the plaintiff was speaking in furtherance of the duties of his or her public employment" *Garcetti v. Ceballos,* 547 U.S. 410 (2006). The First Amendment shields a public employee if he speaks as a citizen on a matter of public concern. *Id., 417.*

261.     A public employee addresses a matter of public concern when his speech relates to an issue of "political, social, or other concern to the community." "Speech that

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

concerns issues about which information is needed or appropriate to enable the members

of society to make informed decisions about the operation of their government merits the

**highest degree of *first amendment* protection**." *Lancaster v. County of Yolo*, 2007 US

Dist. Lexis 47374.

262.    State police officer's speech is protected under the First Amendment from

retaliatory actions by supervisors. *Huppert v. City*, 574 F.3d 696 (9th Cir. 2009).

263.    The law is settled that as a general matter the First Amendment prohibits

government officials from subjecting an individual to retaliatory actions, including

criminal prosecutions, for speaking out. *Hartman v. Moore*, 547 U.S. 250 (2006).

## FIFTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Retaliation for Exercise of the Fifth Amendment Right

### (Against Ausmus in her individual capacity only)

264.    Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

265.    On at least sixteen different occasions, Defendant Ausmus mentioned that

Plaintiff had immunity during her testimony at trial. This was irrelevant to Defendant

Ausmus' "investigation" and was only used to conclude guilt based on Plaintiff's grant of

immunity. "It would be fundamentally unfair to attack defendant for invoking their right

to remain silent." *Doyle v. Ohio*, 426 U.S. 610 (1976).

266.    Defendant Ausmus retaliated against Plaintiff for her exercise of the Fifth

Amendment Right to remain silent.

267.    As a direct and foreseeable consequence of these acts and omissions, Plaintiff was

deprived of her rights under the U.S. Constitution.

268.    As a direct and foreseeable consequence of these deprivations, Plaintiff has

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm to her reputation.

## SIXTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Retaliation for Filing Workers Compensation Claim

### (Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)

269.    Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

270.    Acting under color of law, defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves to deprive Plaintiff of her constitutional rights by presenting charges against Plaintiff, which these Defendants knew were outside of their jurisdiction, barred by statute of limitations, not supported by probable cause and totally devoid of evidentiary support.

271.    Defendants know that their "termination" attempt is in substance the attempt to evade the payment for work related disability. Defendants do not want to consider any disciplinary punishment short of termination, because in that case Plaintiff would "still be on the books" and thus qualify for disability retirement, the outcome Defendants are looking to avoid.

272.    Under the pretext of administrative action, defendants proceeded in bad faith and in violation of the U.S. Constitution.

273.    As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

274.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

to her reputation.

## SEVENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Malicious Prosecution

**(Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)**

275.    Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

276.    Acting under color of law, Defendants have deprived Plaintiff of rights secured to her by the U.S. Constitution and laws.

277.    Beginning on August 24, 2018, Defendants acting individually and in concert, instituted or participated in the institution of quasi-criminal proceedings against Plaintiff.

278.    These proceedings were not supported by probable cause and were terminated in Plaintiff's favor on January 24, 2018.

279.    Defendants demonstrated malice, spite, ill-will, and wanton disregard for Plaintiff's rights by conspiring to manufacture and by manufacturing false and misleading investigative report with the knowledge that this report would be used to advance and perpetuate the quasi-criminal process against Plaintiff.

280.    Defendants demonstrated malice, spite, ill-will, and wanton disregard for Plaintiff's rights by deliberately withholding exculpatory evidence from Plaintiff. On five different occasions Plaintiff requested any documents or communications relevant to any investigation of the allegations against Plaintiff, including the FBI investigation. Defendants ignored Plaintiff's requests.

281.    Defendants demonstrated malice, spite, ill-will, and wanton disregard for Plaintiff's rights by continuing investigation of the allegations discovered to lack of probable cause.

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

282.     Defendants demonstrated malice, spite, ill-will, and wanton disregard for Plaintiff's rights by continuing investigation knowing they have no subject matter or territorial jurisdiction over the charges; the charges were barred by statute of limitations; totally devoid of evidentiary support; and in violation of the U.S. Constitution.

283.     Defendants demonstrated malice, spite, ill-will, and wanton disregard for Plaintiff's rights by deliberately fabricating evidence and providing false "expert opinions" in their investigative report.

284.     Defendants proceeded with the quasi-criminal action with the intent to deprive Plaintiff of equal protection of the law (liberty and property right to her employment, salary, reputation, disability retirement).

285.     Defendant Ausmus acted in an investigatory capacity; Supervisory Defendants acted as Ausmus' supervisors and ratified her conduct. Qualified immunity would not apply to these investigatory activities.

286.     As a direct and foreseeable consequence of Defendants' conduct, Plaintiff was unreasonably and unlawfully subjected to quasi-criminal prosecution.

287.     As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

288.     As a direct and foreseeable consequence of being subjected to quasi-criminal prosecution, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, loss of property, and irreparable harm to her reputation.

289.     "Malicious prosecution is also actionable under [CA] state law where the defendant continues to prosecute a lawsuit discovered to lack probable cause". *Miller v*

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

*Morris*, <u>2018 US Dist. 9 Lexis 75248.</u>

290.     The Ninth Circuit has held that "malicious prosecution with the intent to deprive a person of equal protection of the law or otherwise to subject a person to denial of constitutional rights is cognizable under § 1983." *Awabdy v. City of Adelanto, 368 F.3d 1062, 1069 (9th Cir. 2004). Worley v. Brewer,* <u>2017 US Dist. Lexis 104043.</u>

### EIGHTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Procedural Due Process

### (Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)

291.     Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

292.     Acting under color of law, Defendants have violated Plaintiff's right to procedural due process. Defendants are attempting to deprive Plaintiff of her employment, salary, her career and disability retirement under the pretext of a disciplinary proceeding.

293.     The "disciplinary proceeding" is based upon allegations which were investigated without probable cause, in bad faith, in retaliation of Plaintiff's exercise of her First and Fifth Amendment rights, and totally devoid of evidentiary support.

294.     Defendants knowingly, maliciously, willfully and wantonly, and evincing a complete and utter disregard for the truth, initiated legal proceeding against Plaintiff with knowledge they have no subject matter or territorial jurisdiction over the charges; the charges were barred by statute of limitations; there was no probable cause for the charges; the charges were totally devoid of evidentiary support; and the investigation violated the U.S. Constitution.

295.     Defendant Ausmus acted outside of jurisdiction; manufactured false charges; failed to state or prove elements of charges; fabricated false evidence and illegally used

<u>COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS</u>

53

Plaintiff's immunized testimony and Plaintiff's compelled statement in violation of the U.S. Constitution.

296.    Defendants further conspired to deliberately withhold exculpatory evidence.

297.    Defendants violated Plaintiff's clearly established due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by Defendants.

298.    As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

299.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm to her reputation.

300.    "Where administrative action has raised serious constitutional problems, the Court has assumed that Congress or the President intended to afford those affected by the action the traditional safeguards of due process. See, e. g., The Japanese Immigrant Case [Kaoru Yamataya v. Fisher] 189 U.S. 86, 101; Dismuke v. United States, 297 U.S. 167, 172,; Ex parte Endo, 323 U.S. 283, 299-300; American Power & Light Co. v. Securities and Exchange Commission, 329 U.S. 90, 107-108; Hannegan v. Esquire, 327 U.S. 146, 156; Wong Yang Sung v. McGrath, 339 U.S. 33, 49; Cf. Anniston Mfg. Co. v. Davis, 301 U.S. 337; United States v. Rumely, 345 U.S. 41. These cases reflect the Court's concern that traditional forms of fair procedure not be restricted by implication and without the most explicit action by the Nation's lawmakers, even in areas where it is possible that the Constitution presents no inhibition." *Larche v. Hannah*, 177 F. Supp. 816 (1959).

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

301.    When governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. *Fitzgerald v. Hampton*, 467 F.2d 755 (D.C. Cir. 1972).

302.    "Due process of law," is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature. (*Weimer* v. *Brueinbury*, 30 Mich., 201.) *Stuart v. Palmer*, 74 N.Y. 183 (1878).

303.    A state statute can give rise to federally protected due process interests. *Groten v. California*, 251 F.3d 844, 850 (9th Cir.2001). State statutes providing for particular procedures may create entitlements protected by due process…. [I]f the procedural requirements were intended to operate as a "significant substantive restriction" on the agency's actions, a property interest may be created. *Id. San Joaquin Deputy Sheriffs' Ass'n v. Cnty. of San Joaquin*, 898 F. Supp. 2d 1177 (2012).

304.    Procedural Due Process right at issue here are those under PSOR Bill of Rights, Cal. Gov. Code 3300. Federal Court has supplemental jurisdiction over claims under POBRA. *Jordan v. Kirkman, 2008 US Dist Lexis 110446.*

305.    More protective process will generally be required the more the "length or severity of the deprivation" indicate "a likelihood" that "serious loss" will accompany any mistake. (See Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1 (1978)).

306.    A fair trial in a fair tribunal is a basic requirement of due process. This applies to administrative agencies which adjudicate as well as to courts. (See Withrow v. Larkin, 421 U.S. 35, 46 (1975). *Saucon Valley v. Miller*, 2019 US Dist Lexis 94969.

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

## NINTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Substantive Due Process

**(Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)**

307.    Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

308.    The Fourteenth Amendment of the United States Constitution provides: "nor shall any state deprive any person of life, liberty, or property, without due process of law . . . ."

309.    42 U.S.C. § 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

310.    Acting under color of law, Defendants have deprived Plaintiff of rights secured to her by the U.S. Constitution and laws.

311.    Plaintiff has a protected property right in her employment.

312.    Plaintiff has a protected liberty interest in being free from the unfair stigma the defendants attempt to impose on her, which will continue to impair her ability to obtain employment.

313.    Plaintiff has a First Amendment right to engage in speech and association with her colleagues at the Oakland Police Department, which Defendants' conduct has infringed profoundly.

314.    Defendants have separated Plaintiff from her profession and stripped her of ability to carry a firearm and to protect herself from any retaliation, all of which are additional tangible property deprivations that were imposed without <u>any</u> process whatsoever. Defendants knew Plaintiff resided in Alameda (city bordering Oakland) and there is a

<u>COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS</u>

56

high chance she may encounter people she engaged on duty. For example, in 2017, an
OPD officer was physically attacked in Alameda by two people.

315.    Plaintiff has been denied the right to neutral decision makers. Defendant Ausmus
showed her bias on numerous occasions during her investigation.

316.    The special facts and circumstances of this case show that the risk of unfairness is
intolerably high. Direct and circumstantial evidence demonstrates that bias, prejudice,
and lack of impartiality have operated to deny Plaintiff due process.

317.    It is a violation of due process for defendants to act outside their official capacity
and legal authority. Defendants accused Plaintiff of alleged crimes that were already
declined by the FBI.

318.    Defendants have completed the Oakland Police Academy. Defendants know they
did not have jurisdiction or probable cause to investigate the alleged crimes. Furthermore,
the alleged crimes are barred by the statute of limitations.

319.    Defendants had an absolute duty and moral obligation to not engage in obvious
violations of a fellow police officer's civil rights or a United States citizen's civil rights.
Plaintiff is very upset, traumatized and emotionally impacted by defendants' actions.

320.    As a direct and foreseeable consequence of these acts and omissions, Plaintiff was
deprived of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments
to the U.S. Constitution.

321.    As a direct and foreseeable consequence of these deprivations, Plaintiff has
suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm
to her reputation.

322.    A State cannot exclude a person from the practice of law or from any other

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

occupation in a manner or for reasons that contravene the Due Process or Equal

Protection Clause of the Fourteenth Amendment. *Willner v. Committee on Character,*

373 U.S. 96, 102 (1963). We have emphasized in recent years that procedural due process

often requires confrontation and cross-examination of those whose word deprives a

person of his livelihood. *See Greene v. McElroy,* 360 U. S. 474 (1959). *Id, 103.*

323.     It is well accepted that a California police officer has a protected property right in

his or her employment. This property right derives largely from *Cal. Gov. Code §*

3304(b) (West 1985) which provides that no public safety officer may be subjected to

punitive action or denied a promotion on grounds other than merit without having the

opportunity for an administrative appeal. Punitive action includes discharge and

suspension. *Barberic v. Hawthorne,* 669 F. Supp. 985, 990 (1987).

324.     "Termination of a public employee which includes publication of stigmatizing

charges triggers due process protections." "A person has liberty interest in employment

protected by Due Process Clause if the dismissal effectively precludes future work in the

individual's chosen profession. *Ames v. Lindquist,* 2019 Dist 9 Lexis 13419 (citing

*Braswell v. Shoreline Fire Dept.,* 622 F3d 1099 (9th Cir 2010).

## TENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Due Process Violation to Deprive Disability Retirement

### (Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)

325.     Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

326.     Acting under color of law, Defendants have deprived Plaintiff of rights secured to

her by the U.S. Constitution and laws.

327.     Plaintiff suffered a serious work injury and has a vested property right to

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

disability retirement.

328.     The special facts and circumstances of this case show that the risk of unfairness is intolerably high. Direct and circumstantial evidence demonstrates that bias, prejudice, and lack of impartiality have operated to deny Plaintiff due process.

329.     It is a violation of due process for defendants to act outside their official capacity and legal authority. Defendants accused Plaintiff of alleged crimes that were already declined by the FBI.

330.     Defendants have completed the Oakland Police Academy. Defendants know they did not have jurisdiction or probable cause to investigate the alleged crimes.

331.     Defendants had an absolute duty and moral obligation to not engage in obvious violations of a fellow police officer's civil rights or a United States citizen's civil rights. Plaintiff is very upset, traumatized and emotionally impacted by defendants' actions.

332.     As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

333.     As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm to her reputation.

334.     A disabled California police officer has a vested right to disability retirement. *Frank v. Board of Administration*, 56 Cal. App. 237 (1976).

335.     Ninth Circuit held "Section 21022 clearly gives city police officers a vested right to disability retirement if they suffer a work-related disability." *Ostlund v. Bobb*, 825 F.2d 1371 (9th Cir. 1987) (citing *Watkins v. City of Santa Ana*, 189 Cal.App.3d 393, 234

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

Cal.Rptr. 406, 408 (1987)).

336.     "Where administrative action has raised serious constitutional problems, the Court

has assumed that Congress or the President intended to afford those affected by the action

the traditional safeguards of due process. *Larche v. Hannah*, 177 F. Supp. 816 (1959).

## ELEVENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Supervisory Violations

### (Against Mork, Millington and Kirkpatrick in their individual capacities)

337.     Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

338.     Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1983.

339.     Defendants individually and in concert were acting under color of law in their

actions and omissions which occurred at all times relevant to this action.

340.     On or about August 24, 2018, Defendant Ausmus with the acquiescence and

approval of Supervisory Defendants assumed direct responsibility for the investigation of

Plaintiff.

341.     During the course of her investigation, Defendant Ausmus engaged in a number

of investigative abuses, including fabricating false evidence, fabricating false laws,

suppression of exculpatory evidence, and violating the U.S. Constitution.

342.     After over a year of "investigation", Defendant Ausmus failed to provide any

relevant sworn testimonies, or do any relevant investigation aside from illegally using the

trial transcript of Plaintiff's 2018 immunized testimony of a third party proceeding.

343.     Defendant Ausmus failed to demonstrate she had any investigative experience.

She failed to demonstrate any training or experience in investigating federal crimes.

344.     Supervisory Defendants knew, or should have known, about these abuses and

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

failed to take meaningful preventative or remedial action.

345.    Supervisory Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

346.    As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

347.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm to her reputation.

348.    *Taylor v. List*, <u>880 F.2d 1040, 1045</u> (9th Cir. 1989) "A supervisor is only liable for constitutional violations of his subordinates if [he] participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Hunt v. Davis*, <u>749 Fed Appx 552</u> (2018).

349.    "[w]hen a state actor's deliberate indifference deprives someone of his or her protected liberty interest in bodily integrity, that actor violates the Constitution, regardless of whether the actor is a supervisor or subordinate, and the actor may be held liable for the resulting harm. See *Sandra T.E. v. Grindle*, 599 F.3d 583, 591 (7th Cir.2010). *Starr v. Baca*, <u>652 Fed. 3d 1202</u> (2011).

350.    A **supervisor can be liable in his individual capacity** for his own culpable action or inaction in the training, supervision or control of his subordinates, **for his acquiescence in the constitutional deprivation** of which the complain is made, or for conduct that showed a reckless or callous indifference to the rights of others. *Neylon v. County of Inyo*, <u>2016 US Dist 9 Lexis 161326</u> (citing *Henry A. v. Willden*, <u>678 F.3d</u>

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

991 (9th Cir. 2012)).

351.       As stated in *Larez v. City of Los Angeles, 946 F.2d 630 (9th Cir. 1991)*:

Supervisory liability is imposed against a **supervisory official in his individual capacity**
for his "own culpable **action or inaction in the training, supervision, or control of his
subordinates,**" *Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir.1987)*; for his "'acquiesce
[nce] in the constitutional deprivations of which [the] complaint is made,'" *Meade v.
Grubbs, 841 F.2d 1512, 1528 (10th Cir.1988)* (citation omitted); or for conduct that
showed a "'reckless or callous indifference to the rights of others.'" *Bordanaro, 871 F.2d
at 1163. 946 F.2d at 646. Stoll v County of Kern*, 2008 US Dist Lexis 86535.

### TWELFTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Ratification of Unconstitutional Conduct

### (Against Mork, Millington and Kirkpatrick in their individual capacities)

352.       Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

353.       Upon information and belief, Supervisory Defendants Mork, Millington and
Kirkpatrick had knowledge through the chain of command that Defendant Ausmus
engaged in a number of investigative abuses, including fabricating false evidence,
fabricating false laws, suppression of exculpatory evidence, and violating the U.S.
Constitution.

354.       It would have been plainly obvious to a reasonable supervisor that such conduct
would lead to deprivation of Plaintiff's constitutional rights.

355.       Upon information and belief, Supervisory Defendants nevertheless agreed to,
approved, and ratified this unconstitutional conduct by Defendant Ausmus and
subordinates through their chain of command.

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

356. As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

357. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm to her reputation.

358. Ratification of unconstitutional conduct is both a theory of municipal and individual liability under 42 USC 1983. (*See Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991)) where supervisor had previously set in motion acts of others which caused the others to inflict a constitutional injury. *Peschel v. City of Missoula*, 686 F. Supp. 2d 1092 (D. Mont. 2009).

## THIRTEENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1985 - Conspiracy to Deprive Employment

### (Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)

359. Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

360. Acting under color of law, Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves to deprive Plaintiff of her constitutional rights (property right to employment) by presenting charges against Plaintiff, which these Defendants knew were outside of their jurisdiction, were barred by statute of limitations, not supported by probable cause and totally devoid of evidentiary support.

361. Defendants willfully participated in this illegal objective by various means, with the intent to further some purpose of the conspiracy, including, for example:

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

- Disseminating false and inflammatory public statements regarding Plaintiff;

- Manufacturing and approving false charges; Fabricating and proving elements of alleged crimes by relying exclusively on journal articles;

- Entering into a conspiracy to deliberately withhold exculpatory evidence;

- Illegally using an immunized testimony;

- Illegally using compelled statement;

- Self-proclaiming to be an expert witness and making expert opinions regarding Federal charges.

362.    Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

363.    As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

364.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm to her reputation.

365.    To prove a conspiracy... [plaintiff] must show "an agreement or `meeting of the minds' to violate constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865 F.2d 1539, 1540-41 (9th Cir.1989) (quotations omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* at 1541. Agreement can be inferred based on... actions of the defendants. *Franklin v. Fox,* 312 F.3d 423 (2002).

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

366.     To be liable as a conspirator you must be a voluntary participant in a common venture, although you need not have agreed on the details of the conspiratorial scheme or even know who the other conspirators are. It is enough if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them. *Jones v. City of Chicago*, <u>856 F. 2d 985</u> (1988).

### FOURTEENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1985 - Conspiracy to Deprive Disability Retirement

### (Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)

367.     Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

368.     Acting under color of law, Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves to deprive Plaintiff of her constitutional rights (property right to disability retirement) by presenting charges against Plaintiff, which these Defendants knew were outside of their jurisdiction, barred by statute of limitations, not supported by probable cause and totally devoid of evidentiary support.

369.     Defendants willfully participated in this illegal objective by various means, with the intent to further some purpose of the conspiracy, including, for example:

-     Disseminating false and inflammatory public statements regarding Plaintiff;

-     Manufacturing and approving false charges; Fabricating and proving elements of alleged crimes by relying exclusively on journal articles;

-     Entering into a conspiracy to deliberately withhold exculpatory evidence;

-     Illegally using an immunized testimony;

-     Illegally using compelled statement;

<u>COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS</u>

- Self-proclaiming to be an expert witness and making expert opinions regarding Federal charges.

370.    Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

371.    As a direct and foreseeable consequence of these acts and omissions, Plaintiff was deprived of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

372.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm to her reputation.

**FIFTEENTH CLAIM FOR RELIEF**

**42 U.S.C. § 1986 - Failure to Prevent the Violations of §1985**

**(Against Mork, Millington and Kirkpatrick in their individual capacities)**

373.    Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

374.    Supervisory Defendants had prior knowledge of the wrongs conspired to be committed by Defendants in their chain of command.

375.    Supervisory Defendants had the power to prevent or aid in preventing the commission of the wrongs conspired to be committed by Defendants, and which by reasonable diligence could have been prevented, but they neglected and/or refused to exercise such power.

376.    As a direct and proximate result of the neglect and/or refusal of the Supervisory Defendants to prevent or to aid in preventing the commission of the wrongs conspired to be committed by Defendants, the Plaintiff suffered injuries and damages as alleged

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

66

herein.

377.    The Supervisory Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff's constitutional rights.

378.    As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution.

379.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm to her reputation.

## SIXTEENTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 - Making False Public Statements

### (Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)

380.    Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

381.    Defendants failed to keep their investigation confidential as required by law (Cal. PC § 832.8). The rumor at the OPD was that Plaintiff is being investigated for testifying at court.

382.    As a result of Defendant's actions, Plaintiff's good name, reputation, honor and integrity has been ruined. Many of Plaintiff's co-workers stopped talking to her since the investigation began and it continues now. For example, on November 22, 2019, Plaintiff saw two OPD officers at a coffee shop. Plaintiff used to be friends and work with these officers in patrol. The officers looked at Plaintiff, then turned away and acted as if they do not know her. Plaintiff felt embarrassed, ridiculed, and shamed.

383.    As a direct and foreseeable consequence of these acts and omissions, Plaintiff was

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

deprived of her rights under the Fourteenth Amendments to the U.S. Constitution.

384.    As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, emotional trauma, loss of liberty, property and irreparable harm to her reputation.

385.    Fourteenth Amendment protects against deprivations of liberty or property rights without due process of law. In this regard, the Supreme Court has recognized the right to due process "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). *Evans v. City of Durham*, 2011 US Dist Lexis 156711.

## SEVENTEENTH CLAIM FOR RELIEF

### State Law Claim - Intentional Infliction of Emotional Distress

### (Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)

386.    Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

387.    Defendants were acting under color of state law in their actions and omissions which occurred at all times relevant to this action.

388.    In the manner fully set forth above, the acts and conduct of Defendants were extreme and outrageous. Defendants intended to cause or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff.

389.    These actions were undertaken with malice, willfulness, and with reckless indifference to Plaintiff's constitutional and state law rights.

390.    As a direct and proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish.

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

## EIGHTEENTH CLAIM FOR RELIEF

### Punitive Damages

**(Against Ausmus, Mork, Millington and Kirkpatrick in their individual capacities)**

391.    Plaintiff re-alleges all prior relevant paragraphs as though fully set forth herein.

392.    Knowing that Plaintiff suffered a work-related disability, Defendants conspired and decided to find an excuse for firing Plaintiff, making her a burden on public welfare and healthcare; all contrary to public policy.

393.    Defendants admitted they do not want to consider any disciplinary punishment short of termination, because otherwise Plaintiff would "still be on the books" and thus qualify for disability retirement, the outcome Defendants are looking to avoid.

394.    Defendants knowingly, maliciously, willfully and wantonly, and evincing a complete and utter disregard for the truth, initiated legal proceeding against Plaintiff with knowledge they have no subject matter or territorial jurisdiction over the charges; the charges were barred by statute of limitations; there was no probable cause for the charges; the charges were totally devoid of evidentiary support; and the investigation violated the U.S. Constitution.

395.    Defendants have completed the Oakland Police Academy. Defendants know they did not have jurisdiction or probable cause to investigate the alleged crimes.

396.    Defendants had an absolute duty and moral obligation to not engage in obvious violations of a fellow police officer's civil rights or a United States citizen's civil rights.

397.    Bad faith is conduct giving rise to the lawsuit may be found where "a party, confronted with a **clear statutory or judicially-imposed duty** towards another, is so recalcitrant in performing that duty that the **injured party is forced to undertake**

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

69

**otherwise unnecessary litigation** to vindicate plain legal rights." *Fitzgerald v. Hampton,* 545 F.Supp. 53, 57 (D.D.C.1982). *American Hospital Assn. v. Sullivan,* 938 F.2d 216 (D.C. Cir. 1991).

398.     Punitive damages may be awarded in a §1983 claim if the defendants conduct was malicious, wanton, or oppressive, or involves reckless or callous indifference to another's rights. *Dugan v. County of Los Angeles,* 2012 US Dist. 9 Lexis 49615 (citing *Smith v. Wade,* 461 US 30, 56 (1983)).

399.     An act or a failure to act is `oppressively' done, if done in a way or manner which injures, or damages, or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of another person. *Dang v. Cross,* 422 F 3d 800 (9th Cir. 2005).

## JURY DEMAND

400.     Plaintiff hereby demands a jury trial in this action.

## PRAYER

Plaintiff prays for relief, as follows:

a.   Compensatory damages in the among of $10,000,000 to compensate Plaintiff for economic damages and an amount determined by jury to compensate Plaintiff for non-economic damages, including but not limited to emotional distress, suffering, loss of reputation, humiliation, inconvenience, mental anguish and loss of enjoyment of life;

b.   Punitive damages for all claims allowed by law in an amount to be determined at trial;

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS

c.  Pre-judgment and post-judgment interest at the highest lawful rate;

d.  For preliminary and permanent injunctive relief prohibiting Defendants from proceeding with the disciplinary process against Plaintiff, and ordering Defendants to permanently reverse their approval of Plaintiff's termination;

e.  For injunctive relief enjoining Defendants from authorizing, allowing, or ratifying the practice of initiating malicious prosecution; fabrication of evidence; withholding of exculpatory evidence and conspiring to violate citizens' Constitutional rights;

f.  Attorneys' fees expenses of litigation as allowed by law;

g.  Such further relief as the court deems just and proper;

h.  Reserves the right to amend this complaint to add claims and parties.


Dated:  12/19/2019

_____
/S/
J. Richter
In Pro Per

COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS