UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA RICHTER, | Case No. 19-cv-08300-WHO |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR LEAVE TO AMEND IN PART AND DENYING IN PART** |
| LISA AUSMUS, et al., | |
| Defendants. | Re: Dkt. No. 68 |

**INTRODUCTION**

Plaintiff Julia Richter moves for leave to amend to file a Fourth Amended Complaint ("FAC"), which adds twenty-four new claims and several new defendants. After reviewing the FAC under the Ninth Circuit's leave to amend standard, I conclude that most of the proposed claims are futile and, accordingly, the motion is denied as to these claims. However, Richter's first, third (to the extent it asserts an equal protection claim on the basis of disability discrimination), fourth, and twenty-sixth claims appear potentially viable under our liberal pleading standard. Accordingly, Richter's motion for leave is granted as to these claims.

Given the size of Richter's proposed complaint, and the number of claims dismissed, Richter will need to file a revised complaint in accordance with this Order. Richter will have until March 3, 2021 to file a revised complaint limited to claims one, three (to the extent it asserts an equal protection claim on the basis of disability discrimination), four, and twenty-six. The revised complaint may only name the defendants named in these four claims. No further amendments will be permitted. Richter should ensure that all defendants named in claims one, three, four, and twenty-six have been or are properly served with the revised complaint. Any other defendants or proposed defendants are dismissed with prejudice.

United States District Court
Northern District of California

# BACKGROUND

## I.      FACT BACKGROUND

The facts of this case are discussed in detail in my prior Order.  Dkt. No. 28.  Richter, a former employee of the Oakland Police Department ("OPD"), alleges two primary sources of misconduct on the part of the defendants.  First, she alleges that she was injured by improper defensive tactics trainings conducted by defendant Gilbert.  FAC ¶¶ 180-201.  Second, she asserts that she was subject to a wrongful investigation in order to prevent her from obtaining disability retirement benefits, which ultimately resulted in her termination.  *Id.* ¶¶ 43-93.  At the time Richter initially filed this action she had not yet been terminated and her disability benefits application was still pending.  Richter received a letter on or about April 20, 2020, from proposed defendant Falk, notifying her that she had been terminated as of March 28, 2020.  *Id.* ¶ 45.  A few weeks later, in May 2020, she received a letter from proposed defendant Riddle at CalPERS, notifying her that her application for disability retirement benefits could not be accepted because she had been terminated for cause.  *Id.*, Ex. 8.

## II.     PROCEDURAL BACKGROUND

This case has a tortured procedural history, which this Order tries to simplify for the future.  Plaintiff Richter filed her initial Complaint in this case on December 19, 2019.  *See* Dkt. No. 1.  She filed an Amended Complaint on January 21, 2020, which contained twenty-one causes of action.  *See* Dkt. No. 11.  On March 24, 2020, I granted defendants' motion to dismiss the Amended Complaint and granted Richter leave to amend sixteen of her alleged causes of action.

Richter filed her Second Amended Complaint ("SAC") on May 13, 2020, which contained thirteen causes of action and named six new defendants.  Dkt. No. 34.  Richter did not seek leave to add these new defendants before filing her SAC.  On July 21, 2020, I granted a motion to dismiss the SAC filed by the original defendants.  Dkt. No. 28.  In that Order I did not dismiss Richter's fifth claim for relief – as it was not asserted against the moving defendants and thus not challenged in their motion – and granted Richter leave to amend her seventh and eighth causes of action.  *Id.* at 8-10.

On September 29, 2020, Richter filed the Third Amended Complaint ("TAC").  *See* Dkt.

United States District Court
Northern District of California

No. 54 ("TAC").  It asserted twenty-seven causes of action, twenty-five of which were new or

were claims that I had already dismissed with prejudice.  *See id.*

On November 23, 2020, I issued an Order striking the TAC and the newly added

defendants and instructed Richter to either file a new complaint limited to the three causes of

action on which I had granted leave to amend, or to file a motion for leave explaining why the new

claims and parties should be added to this action.  *See* Dkt. No. 65.  Richter filed a motion for

leave on December 18, 2020 as well as a proposed Fourth Amended Complaint ("FAC").  *See*

Dkt. Nos. 68 ("MTA"), 69 ("FAC").  The current defendants, Ausmus, Mork, Millington, Gilbert,

Hubbard, and Kirkpatrick filed an opposition to the motion for leave, arguing that many of

Richter's claims are futile or have already been dismissed for cause.  *See* Dkt. No. 71.  The

remaining proposed defendants are not currently part of this action – since they were struck by my

November 23, 2020 Order – and accordingly have not appeared or opposed the motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading once within: (1)

21 days after serving the pleading or (2) 21 days after the earlier of service of a responsive

pleading or service of a Rule 12(b) motion.  Fed. R. Civ. P. 15(a).  Outside of this timeframe, "a

party may amend its pleading only with the opposing party's written consent or the court's leave."

*Id.*  A court "should freely give leave when justice so requires."  *Id.*  "Although the rule should be

interpreted with 'extreme liberality,' leave to amend is not to be granted automatically."  *Jackson*

*v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citation omitted).

A court considers five factors in determining whether to grant leave to amend: "(1) bad

faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5)

whether plaintiff has previously amended his complaint."  *In re Western States Wholesale Nat.*

*Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Allen v. City of Beverly Hills*, 911

F.2d 367, 373 (9th Cir. 1990).  "Prejudice to the opposing party is the most important factor."

*Jackson*, 902 F.2d at 1387.

## DISCUSSION

Richter moves the court for leave to amend her allegations as outlined in her FAC.  She

United States District Court
Northern District of California

argues that she has acted in good faith, with reasonable diligence, that amendment would not prejudice defendants, that her claims are viable, and that, although she has been granted leave to amend twice before, it is reasonable to allow her leave to amend again. MTA at 4-5. For the reasons discussed below, I conclude that Richter has acted in good faith, with reasonable diligence, and that amendment would not prejudice defendants. She is representing herself, which requires me to interpret her pleading liberally. However, I conclude that many of her claims are futile – meaning that they are not legally viable – and so leave is not appropriate as to these claims.

## I.     BAD FAITH, UNDUE DELAY & PREJUDICE TO OPPOSING PARTY

In her motion, Richter argues that she acted in good faith and with due diligence to amend her allegations and add new parties as she learned of their identities. MTA at 4. She further argues that defendants would not be prejudiced by amendment because the case is still in its early stages and no discovery has begun. *Id.* I agree that Richter appears to have acted in good faith and with reasonable due diligence. I further agree, and defendants do not dispute, that amendment will not prejudice defendants.

With regard to good faith, Richter explains that she was not aware that she needed leave of court to add new claims and parties. *Id.* at 4. This is reasonable, given that Richter is acting pro se and does not have the benefit of legal counsel. I do not believe that Richter has made her amendments, or is requesting leave, in bad faith.

Richter further argues that she has acted with reasonable due diligence. She asserts that many of the new claims in her FAC could not have been asserted in earlier complaints because they arise out of her ultimate termination and denial of disability benefits, which did not occur until March 2020 and May 2020, respectively. MTA at 5. In addition, Richter explains that she has added new defendants as she has learned their identities and/or learned of a viable claim against them. She argues that she could not bring claims against defendants Joshi, Allison, Falk, or Stanfield prior to April 20, 2020 when she received a copy of an internal report from OPD, which was the first time she learned of the involvement of these individuals. MTA at 4. She explains that she added the City of Oakland after learning of Falk's involvement, as she believed

this made the City liable for the first time.  *Id.*  And she asserts that she did not know the identities of defendants Byrd-Salas, Riddle, Trinh, or Jenkins until she received particular correspondence from CalPERS on September 2, 2020.  She does not explain why she did not name Kasaine or Riddle in her prior complaints, but her proposed claims against these defendants all relate to the denial of her disability retirement application, which did not occur until May 2020.  Richter's explanations are plausible and she appears to have made her proposed additions with reasonable diligence.

Richter also convincingly argues that amendment will not prejudice defendants.  The case is in its very early stages and no discovery has been taken.  Defendants agree, stating in their opposition "Admittedly, since the Parties have not engaged in any discovery, there is no prejudice from the amendment."  Dkt. No. 71 at 10.

For these reasons, I conclude that Richter has acted in good faith, with reasonable diligence, and that amendment would not prejudice the defendants.

## II.     FUTILITY AND PRIOR AMENDMENTS

The remaining factors courts assess when determining whether to grant leave to amend are (1) whether amendment would be futile; and (2) the number of prior amendments.  *See In re Western States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d at 738.  My analysis as to these factors, and my conclusions as to whether to grant or deny leave for each asserted claim, are below.

### A.     Claim 1 - § 1983 Violation of Fourteenth Amendment Procedural Due Process Rights Regarding Deprivation of Disability Pension

Richter's first claim for relief asserts a procedural due process violation resulting from the denial of her application for disability benefits.  In my July 2020 Order I stated that Richter could proceed with this claim. Dkt. No. 47 at 1.  In addition, as discussed below, the claim does not appear to be futile on its face.  Accordingly, Richter's motion for leave is granted as to claim one.

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) denial of adequate procedural protections."  *Fed. Home Loan Mortg. Corp.*, 893 F.3d 1136 (9th Cir. 2018).  Richter alleges a

property interest in her disability benefits, which she asserts vested at the time she was disabled. FAC ¶ 39.  She further alleges that her application for disability benefits was rejected without adequate process because she was not afforded a hearing.  FAC ¶ 55.

Richter's allegations support a plausible inference that she had a vested right in her disability benefits.  Under California law, an employee's right to immediate payment of disability benefits generally "d[oes] not arise at the time of the injury itself but when the pension board determine[s] that the employee [i]s no longer capable of performing his duties."  *Smith v. City of Napa*, 120 Cal.App.4th 194, 206 (2004).  However, "there may be facts under which a court, applying principles of equity, will deem an employee's right to a disability retirement to be matured and thus survive a dismissal for cause."  *Id.*; *see also Haywood v. Am. River Fire Prot. Dist.*, 67 Cal. App. 4th 1292, 1307 (1998) (suggesting that a termination for cause may not make an employee ineligible for disability benefits when the termination is "preemptive of an otherwise valid claim for disability retirement").  As one district court explained, while there is "a presumption that an employee who is fired for cause before CalPERS determines she is disabled, has no vested right to disability . . . [the] presumption may be rebutted by a showing that the employer took wrongful, preemptive steps to invalidate the disability retirement claim."  *Hutchinson v. Bear Valley Community Servs. Dist.*, Case No. 1:15-cv-01047-JLT, 2016 WL 1029296, *11 (E.D. Cal. Mar. 15, 2016).  The *Hutchinson* court concluded that where the pleadings raised an inference "that the firing decision was a substitute for the disability determination and was made to prevent her from obtaining the disability retirement benefits," it could not rule out the possibility that the plaintiff had a vested right to disability benefits at the pleading stage. *Id.*

Here, as in *Hutchinson*, Richter's allegations are sufficient to support a plausible inference that Richter held a vested property interest in her disability benefits under principles of equity. She has alleged a near two-year delay between the initial filing of her application for disability benefits and the ultimate denial.  *See e.g.* FAC ¶ 164.  She has alleged that defendant Kasaine misled her regarding why her application was delayed in order to convince her to sign two time-waiver forms, an allegation that suggests some deceit by defendants.  *Id.* ¶¶ 50-51.  And she has

6

1   alleged that her attorney received a tip from an Oakland employee, informing her that "the City

2   wants to terminate Julia so that the City of Oakland would not have to pay her disability

3   retirement." *Id.* ¶ 163.  These allegations support an inference that the City of Oakland took

4   wrongful and preemptive steps to terminate Richter to avoid paying her disability benefits, and

5   may be able to rebut the presumption that Richter's benefits did not vest.

6          Richter's allegations are also sufficient to support a claim of inadequate process.  Richter

7   alleges that she was denied a hearing on the merits of her disability retirement application.  FAC ¶

8   55.  This assertion is supported by Exhibit 8, her denial letter from CalPERS, which indicates that

9   CalPERS rejected her application outright because Richter was terminated for cause – and thus not

10   eligible to apply for benefits.  FAC, Ex. 8.  Richter's allegations indicate that CalPERS did not

11   believe she had any vested right to disability benefits and, accordingly, did not provide her with

12   any due process in denying her application.  Accordingly, Richter's assertion that she was not

13   afforded adequate process is plausible.

14          Because I previously held that Richter could proceed with this claim, and because

15   Richter's allegations appear facially plausible, Richter's motion for leave is granted as to claim

16   one.

17          **B.      Claim 2 - § 1983 Conspiracy to Deprive Plaintiff of Rights to Disability
               Pension, Public Employment and Liberty Interest in Public Employment, in
18             Violation of Due Process**

19          Richter's second claim for relief asserts a conspiracy among all the defendants to deprive

20   her of her employment and disability pension in violation of due process of law.  FAC. ¶¶ 61-117.

21   Richter asserts that in my July Order I granted her leave to amend this claim.  MTA at 5.  This is

22   not correct.  I previously granted Richter leave to amend a §1985 conspiracy claim, noting that

23   Richter needed to amend the claim to adequately allege "class-based animus," a specific

24   requirement of §1985 claims.  Dkt. No. 28 at 15.  Instead of amending her §1985 claim, Richter

25   dropped it and replaced it with a §1983 conspiracy claim.  Richter's §1983 claim is substantively

26   different than her previously asserted §1985 claim and she accordingly requires leave to add this

27   claim.

28          Richter's §1983 conspiracy claim is not viable because she has failed to allege any

United States District Court
Northern District of California

underlying legal claim or due process violation.  Her claim is based on alleged violations of civil and criminal procedures that do not apply to OPD's investigation as well as other alleged due process violations that I have already dismissed with prejudice, as discussed in detail below.  For these reasons, I conclude that Richter's §1983 conspiracy claim is futile.  Richter's motion for leave is denied as to claim two.

### 1. Unsupported by Substantial Evidence; Failure to Prove All Elements of Charges

Richter alleges that OPD's investigation and termination was improper because its findings were not supported by substantial evidence.  FAC ¶ 77.  Specifically, Richter asserts that OPD improperly relied on hearsay testimony alone.  *Id.*  She separately argues that OPD's findings were improper because it failed to prove all elements of the "charges" against her.  FAC ¶¶ 78-93.  As I have previously noted, plaintiff was not charged with a crime and, therefore, the evidentiary requirements and burden of proof requirements applicable in criminal proceedings are not applicable to OPD's investigation.  *See* Dkt. No. 28 at 11; Dkt. No. 47 at 6.  Plaintiff cannot sustain a due process violation based on these alleged procedural issues.

### 2. Fabrication of Evidence

Richter alleges that OPD violated her due process rights by fabricating evidence against her.  In my July Order, I dismissed, with prejudice, Richter's stand-alone Fourteenth Amendment claim based on OPD's alleged fabrication of evidence.  Dkt. No. 47 at 6-8.  Richter recycles the same allegations regarding fabrication of evidence here that I have previously found inadequate.  Accordingly, Richter is not permitted to reassert a due process violation based on fabrication of evidence and these allegations cannot support her §1983 conspiracy claim.

### 3. Failure to Comply with 28 U.S.C. 2462

Richter asserts that OPD failed to comply with the five-year statute of limitations set forth in 28 U.S.C. 2462.  FAC ¶ 94.  As explained in more detail below, this statute of limitations applies only to actions brought by the federal government.  *See infra*, section O.  It does not apply to OPD or its internal investigation into Richter's conduct.  Accordingly, this allegation is insufficient to support Richter's §1983 claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

### 4.      Procedural Exceed OPD's Statutory Jurisdiction

Richter asserts that OPD exceeded its statutory jurisdiction by firing her for allegedly criminal conduct that occurred outside of Oakland.  In my prior Order, I dismissed, with prejudice, Richter's Fourteenth Amendment claim based on OPD allegedly exceeding its statutory jurisdiction. Dkt. No. 47 at 6.  Accordingly, plaintiff cannot reassert a due process violation based on OPD allegedly exceeding its statutory jurisdiction.

### 5.      Fifth Amendment Violation

Richter asserts that her Fifth Amendment rights against self-incrimination were violated because she was compelled to testify against herself in a quasi-criminal proceeding. FAC ¶¶ 106-108.  I have previously held that Richter's allegations are insufficient to state a Fifth Amendment violation because she has not alleged that she invoked her Fifth Amendment right against self-incrimination during a criminal investigation.  *See* Dkt. No. 28 at 13; *see also Chavez v.* Martinez, 538 U.S. 760, 770 (2003) ("a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case.").  OPD's internal investigation into Richter, the context in which she alleges her rights were violated, was not a criminal investigation.  Accordingly, plaintiff cannot sustain a due process violation based on an alleged violation of her Fifth Amendment rights.

### 6.      Sixth Amendment Violation

Richter asserts that OPD violated the Sixth Amendment's confrontation clause because it did not present any witnesses in support of its investigative report. FAC ¶ 109.  However, the confrontation clause applies only to criminal and quasi-criminal proceedings.  *See In re Denh Nhiet Chu*, BAP No. NV-07-1243-McMoPa, 2008 WL 8444805, at *12 (9th Cir. BAP Mar. 18, 2008).  While the Supreme Court has held that confrontation is required in some cases involving a deprivation of livelihood, these cases have involved proceedings to terminate or remove an occupational license, such as a license to practice law.  *See Willner v. Committee on Character and Fitness*, 373 U.S. 96, 103-104 (1963) (holding confrontation necessary for due process in character and fitness proceedings that would deprive plaintiff of license to practice law).  It is not evident that this standard is applicable to the type of proceedings here, which resulted in Richter's

1  termination, but did not deprive her of an occupation license.

2      Richter's confrontation clause claim also fails because she specifically alleges in her FAC

3  that "The City would not suffer any additional burden to present the City's witnesses for cross-

4  examination *because the City had no witnesses to present*." FAC ¶ 173 (emphasis added). If

5  OPD's report was not based on witness testimony and/or if the City did not have any witnesses,

6  then there can be no confrontation clause violation. Richter does not allege that she was denied

7  the right to cross-examine any specific witness, and she affirmatively alleges that there were no

8  relevant witnesses. Richter's allegations are accordingly, insufficient to make out a Sixth

9  Amendment violation.

10      As detailed above, Richter has failed to adequately allege any underlying violation of her

11  due process rights as part of OPD's internal investigation. Because plaintiff has not made out an

12  underlying due process violation, her §1983 claim based on an alleged conspiracy to deprive her

13  of her employment, benefits, and liberty interest in public employment without due process of law

14  fails. Richter's §1983 conspiracy claim is accordingly futile and Richter's motion for leave is

15  denied as to claim two.

16      **C.   Claim 3 - § 1983 Violation of Equal Protection Clause**

17      Richter's third claim for relief alleges that defendants violated her due process right to

18  equal protection based on her disability, gender, and national origin. FAC ¶¶ 119-133. Richter's

19  allegations are adequate to support an equal protection claim on the basis of disability, but fail to

20  make out a plausible claim on the basis of national origin or gender discrimination. Accordingly,

21  Richter's motion for leave is granted as to the disability discrimination theory of claim three and

22  denied as to the national origin and gender discrimination theories.

23      In my July Order I granted Richter leave to amend her federal equal protection claim in

24  which she alleged discrimination on the basis of disability. Dkt. No. 47 at 10. In that Order I

25  explained that Richter "must provide facts (and not conclusory allegations) supporting a coherent

26  theory of discrimination as a result of her disability." Dkt. No. 47 at 9-10. Accordingly, Richter

27  does not require leave to amend as to her equal protection claim on the basis of disability. In

28  addition, Richter's disability-based equal protection claim appears facially plausible as alleged. In

her FAC, Richter has added an allegation that in March 2019, her attorney Sarah Burdick "received a tip from an Oakland city employee (whose identity needs to be protected to preclude witness tampering) that the City wants to terminate Julia so that the City of Oakland would not have to pay her disability retirement." FAC ¶ 163. She has also alleged that her co-officer on the case in which she allegedly engaged in misconduct was not investigated for possible termination. FAC ¶ 132. These allegations, taken together support a plausible inference that Richter was treated differently from her co-officer because of her disability.

Richter's two new theories that she was discriminated against on the basis of her national origin and gender are not adequately supported by factual allegations. While I previously granted Richter leave to amend her disability discrimination equal protection claim, I did not grant leave to add new equal protection claims on the basis of national origin or gender discrimination. Accordingly, Richter requires leave of court to add these new discrimination theories. In her FAC Richter alleges that she was discriminated against as a woman and a Ukrainian. She alleges that she was subjected to an internal investigation arising out of a citizen complaint regarding missing property, but that the other officer on the case, a non-Ukrainian male, was not. FAC ¶ 132. She also alleges that her application for disability benefits was halted pending the internal investigation against her, but that a non-Ukrainian male officer's application for benefits was granted while he was under investigation. FAC ¶ 132. These single examples of disparate treatment are not sufficient to plausibly allege that OPD treated her differently *because of* her gender or national origin. An equal protection claim requires something more than merely identifying disparate treatment and attributing the disparity to a protected class.

Richter has had five opportunities to allege an equal protection violation. Her new allegations regarding national origin and gender discrimination are scant and do not come close to adequately alleging an equal protection claim. Given the late addition of these theories and the negligible factual allegations to support them, it does not appear that Richter can plausibly allege an equal protection violation on these bases. Accordingly, I conclude her equal protection claim is futile to the extent it is based on alleged gender or national-origin discrimination.

Richter's motion for leave is granted as to her equal protection claim on the basis of

United States District Court
Northern District of California

United States District Court
Northern District of California

disability discrimination.  The motion is denied as to her equal protection claims on the bases of national origin and gender discrimination.

### D.    Claim 4 - § 1983 Unlawful Taking of Disability Pension in Violation of Fifth and Fourteenth Amendments

Richter's fourth claim for relief asserts a violation of the Fifth Amendment Takings Clause because she was denied her disability retirement benefits.  FAC ¶ 134-143.  Although there are potential weaknesses to Richter's takings clause claim, these issues deserve further consideration than I can at the motion for leave stage.  Richter has plausibly alleged a potential property interest and a taking of her property and may be able to make out a valid takings clause claim. Accordingly, Richter's motion for leave is granted as to claim four.

The Takings Clause states, "Nor shall private property be taken for public use, without just compensation."  U.S. Const. amend. V.  The purpose of the takings clause is "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."  *Armstrong v. United States*, 364 U.S. 40, 49 (1960).  Richter alleges a property interest in her pension benefits.  Richter has at least a plausible argument under *Smith* and *Haywood*, as discussed above, that her rights to disability benefits vested prior to her termination.  She has also alleged a taking of her property – the withholding of her disability benefits.  Richter has therefore alleged both a property interest and a taking of that property.

There are potential problems with Richter's takings clause claim.  For example, it is unclear whether the takings clause applies to these circumstances since the property has not clearly been "taken for public use."  The funds that would have been paid to Richter will presumably continue to be held by CalPERS to be invested, managed, and eventually paid out to other CalPERS beneficiaries.  The Supreme Court has twice found that regulations requiring employers to pay additional money into pension plans do not violate the takings clause, in part because in those cases "the Government did not physically invade or permanently appropriate [plaintiff's] property for *its own use*."  *Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California,* 508 U.S. 602, 604 (1993); *see also Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 222-223 (1986) (noting that plaintiff was deprived of

assets "not to the Government, but to a pension trust").  However, these cases are distinguishable as they involved (1) regulations of general application; (2) did not involve the pension benefits of a particular employee; and (3) did not involve public pension plans.  It is therefore unclear, at this stage, whether this line of cases poses a potential bar to Richter's claim.

Richter has adequately alleged the basic elements of a takings clause claim – a property interest and a taking of that property.  Accordingly, Richter's motion for leave is granted as to this claim.

### E.    Claims 5, 14 – Federal and California Promissory Estoppel to Pay Disability Pension Upon Disability Injury

Richter's fifth and fourteenth claims are for promissory estoppel.  Because Richter has failed to adequately allege the elements of a promissory estoppel under either federal or California law, I conclude that this claim is futile.  Richter's motion for leave is denied as to claims five and fourteen.

"Federal and California law on promissory estoppel are essentially identical."  *Aguilar v. Intn'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 445 n.2 (9th Cir. 1992).  To establish an enforceable contract under a theory of promissory estoppel a plaintiff must show "(1) the existence of a promise; (2) which the promisor reasonably should have expected to induce the promisee's reliance, (3) which actually induces such reliance, (4) that such reliance is reasonable, and (5) that injustice can only be avoided by enforcement of the promise."  *Id.* at 445.

Richter alleges that defendants made a promise to her because California Government Code § 21151(a) states that "Any patrol, state safety, state industrial, state peace officer/firefighter, or local safety member incapacitated for the performance of duty as the result of an industrial disability shall be retired for disability pursuant to this chapter, regardless of age or amount of service."  Although this statutory language may govern the defendants' conduct in some way, it is a state statute – not a promise from any of the defendants.  Richter has therefore failed to allege the first element of a promissory estoppel claim – the existence of a promise.

Because these claims appear non-viable and futile, Richter's motion for leave is denied as to claims five and fourteen.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

###### F.       Claim 6 – Violation of Americans With Disabilities Act, Title II

Richter's sixth claim for relief asserts a violation of Title II of the Americans With Disabilities Act ("ADA").  FAC ¶¶ 154-162.  Because Title II of the ADA does not apply to employment discrimination claims, I conclude this claim is futile.  Richter's motion for leave is denied as to claim six.

"To state a claim of disability discrimination under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Thompson v. Davis*, 295 F.3d 890 (9th Cir. 2002).

While Title II's language is broad, the Ninth Circuit has held that Title II does not apply to employment discrimination claims, which are instead governed exclusively by Title I.  *See Zimmerman v. Oregon Dept. of Justice*, 170 F.3d 1169, 1174 (9th Cir. 1999).  In *Zimmerman*, the Ninth Circuit explained that Title II "applies only to the 'outputs' of a public agency, not to 'inputs' such as employment."  *Id.*  An agency's "outputs" are the types of "services, programs, and activities" that the agency provides to the public and which are "generally available."  *Id.*

Here, Richter's claim relates to and arises out of her employment at OPD and is therefore not cognizable under Title II of the ADA.  She alleges that she was discriminated against by OPD and that OPD improperly investigated and terminated her in order to avoid paying her disability benefits.  The "services, programs, and activities" that Richter alleges she was barred from participating in or receiving are her continued employment and/or disability benefits, which are considered part of a public employee's compensation.  *Miller v. State of California*, 18 Cal. 3d 808, 814 (1977) ("Pension rights . . . are deferred compensation").  Neither of these are "outputs" under *Zimmerman*.  Instead, both are directly tethered to and contingent on her employment relationship with OPD and are therefore "inputs."

Accordingly, Richter's Title II ADA claim is futile and her motion for leave is denied as to

1   this claim.

2   **G.    Claim 7 - § 1983 – Violation of Due Process Regarding Deprivation of Right to Public Employment, Benefits and Stigma Plus in Violation of Fourteenth Amendment**

3

4   Richter's seventh claim asserts a deprivation of her right to public employment and

5   pension benefits in violation of due process of law under the Fourteenth Amendment and

6   California law.  FAC ¶¶ 165-179, 246-251.  Because Richter has failed to identify a valid due

7   process violation, her motion for leave is denied as to claim seven.

8   As discussed above with regard to Richter's §1983 conspiracy claim, Richter has failed to

9   adequately allege a due process violation regarding OPD's internal investigation into her allegedly

10  improper conduct.  *See* Discussion Section II, O.  Richter's seventh claim for relief does not allege

11  any additional facts or due process violations, but instead restates or cites back to her allegations

12  in claim two and restates the same alleged problems with OPD's investigation.  For the same

13  reasons stated above, these underlying allegations do not establish any actionable procedural or

14  due process violations in OPD's internal investigation proceedings.

15  Accordingly, Richter's seventh claim for relief is not viable and Richter's motion for leave

16  is denied as to this claim.

17  **H.    Claims 8, 9 - § 1983 Fourteenth Amendment Due Process Right to be Free From State Created Danger & Right to Bodily Integrity**

18

19  Richter's eighth claim asserts an alleged violation of her Fourteenth Amendment due

20  process right to be free from state created danger.  Her ninth claim asserts alleged violations of her

21  Fourteenth Amendment due process right to bodily integrity.  I have previously dismissed

22  Richter's "state created danger" claim with prejudice.  Her "bodily integrity" claim is

23  substantively identical and is therefore, also barred.  Accordingly, Richter's motion for leave is

24  denied as to claims eight and nine.

25  I previously dismissed Richter's "state created danger" claim with prejudice for the reasons

26  outlined in my July Order granting, in part, defendants' motion to dismiss the SAC.  *See* Dkt. No.

27  47 at 6-8.  It is therefore improper for Richter to reassert it.  Richter's ninth claim asserts alleged

28  violations of her Fourteenth Amendment due process right to bodily integrity.  This claim, though

United States District Court
Northern District of California

given a different title, is substantively identical to her "state created danger" claim and is

therefore, also barred.  "State created danger" is a specific doctrine that creates an exception to the

general rule that a "state's failure to protect an individual against private violence does not

generally violate the guarantee of due process."  *Kennedy v. City of Ridgefield*, 439 F.3d 1055,

1061 (9th Cir. 2006).  The "state-created danger" doctrine allows plaintiffs to bring claims for

violations to their bodily integrity based on state omissions and indirect actions.  *Id.* at 1062-1064.

Although Richter's ninth claim does not recite the term "state-created danger" it also seeks to

redress an alleged violation to her bodily integrity based on the same allegations that defendant

Gilbert "directed Julia into known and obvious danger" by instructing her to use unapproved

training techniques.  *See* FAC ¶ 205.  Plaintiff does not allege that Gilbert personally caused her

injury, but that he "affirmatively placed the plaintiff in a position of danger."  *Kennedy*, 439 F.3d

at 1061.  This is the same exact legal theory and allegations as Richter's "state-created danger"

claim and therefore, fails for the same reasons discussed in my prior order.

Because I have already dismissed Richter's "state created danger" claim with prejudice,

her motion for leave is denied as to claims eight and nine.

## I.   Claims 10, 12, 18, 19, 22, 23, 24 – Bane Act § 52.1 Violations; Cal. Civ. Code § 52.3(a), Cal. Gov. Code § 815.2

Richter's tenth, twelfth, eighteenth, nineteenth, twenty-second, twenty-third, and twenty-

fourth claims assert violations of California's Bane Act based on the alleged violations of law

asserted in claims one, two, three, four, eight, and nine.  *See* FAC ¶¶ 208-212; 222, 230-235; 245-

251; 274-279.  All of these claims are futile because Richter has not, and presumably cannot,

allege "threats, intimidation or coercion" within the meaning of the Act.[1]  Accordingly, Richter's

motion for leave is denied as to claims ten, twelve, eighteen, nineteen, twenty-two, twenty-three,

and twenty-four.

To state a claim under the Bane Act, a plaintiff must show "(1) intentional interference or

attempted interference with a state or federal constitutional or legal right, and (2) the interference

---

[1]     Many of these claims are also futile because the underlying violations of law they relate to are not viable.

or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015).  Richter alleges that defendants coercively deprived her of her disability pension, without due process, because Kasaine "used David Low to coerce and fraudulently induce Julia into signing the City's time waver [sic], extending the City of Oakland's deadline to January 2020."  FAC ¶ 211.  She alleges elsewhere that Low pressured her into signing the form over email, telling her if she did not "your IDR application may be cancelled."  FAC ¶ 52; FAC, Ex. 4.

This conduct is not sufficient to constitute a "threat, intimidation or coercion" under the Bane Act.  Richter's allegations do not indicate that Kasaine or Low used any physical force or intimidation to coerce her into signing the time waivers.  "[S]peech alone is not sufficient to support an action brought pursuant to [the Bane Act], except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat."  Cal. Civ. Code § 52.1(k); *see also Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010) ("The test is whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat of violence.")

Richter's allegations do not meet the standard for actionable speech set out by the Bane Act as she has not alleged that Kasaine or Low made any threats of violence against her.  Her allegation that Low pressured her to sign the time waivers at risk of her disability application being cancelled is not the sort of conduct necessary to support a Bane Act claim.  *See Center for Bio-Ethical Reform, Inc. v. Irvine Co., LLC*, 37 Cal. App. 5th 97, 115 (2019) (holding that allegations that "Communicating in writing or otherwise that a person will be treated as a trespasser and removed from property should they choose to engage in certain activities" was not a Bane Act violation).  Accordingly, Richter's allegations do not support a viable Ban Act claim.

In each of these claims Richter also cites California Civil Code § 52.3 and California Government Code 815.2.  Neither of these sections is a vehicle for bringing a private action.  As

multiple California courts have confirmed, California Civil Code § 52.3 applies exclusively to actions brought by state prosecutors and does not contain a private right of action. *See Scocca v. Smith*, No. C-11-1318-EMC, 2012 WL 2375203, at *8-10 (conducting thorough statutory interpretation under California law and concluding that § 52.3 does not contain a private right of action); *Fresquez v. County of Stanislaus*, Case No. 1:13-cv-1987 AWI SAB, 2014 WL 1922560, at *13 (E.D. Cal. May 14, 2014) (following *Scocca*); *Akhtarshad v. City of Corona*, Case No. EDCV 08-290-VAP (JCRx), 2009 WL 362130, at *7 n.4 (C.D. Cal. Feb. 10, 2009) ("There is no private right of action to enforce California Civil Code § 52.3 . . .."). California Government Code § 815.2 similarly does not create a private right of action, but simply sets forth conditions under which a public entity is liable for injuries caused by public employees. Cal. Gov. Code § 815.2.

Because I conclude that Richter's Bane Act claims are futile, her motion for leave is denied as to claims ten, twelve, eighteen, nineteen, twenty-two, twenty-three, and twenty-four.

### J.      Claim 11 – Violation of Mandatory Duty Under Cal. Gov. Code §§ 21151-21157, Cal. Ins. Code § 10110.6, and Breach of Contract

In her eleventh claim, Richter asserts that CalPERS improperly denied her application for disability benefits on the basis that she was terminated from her job, which she alleges is not a term in her union contract and therefore not a valid basis for denying her benefits. FAC ¶ 215. She further argues that even if this was a term of the contract, it is void because "discretionary" clauses are not permitted under Cal. Ins. Code § 10110.6. *Id.* ¶ 216. I conclude that this claim is futile and not viable because Richter's allegations indicate that her disability benefits application was denied pursuant to a line of California case law, not pursuant to a contract term. Accordingly, Richter's motion for leave is denied as to claim eleven.

Richter's allegations and the exhibits attached to her FAC indicate that CalPERS denied her claim for disability benefits under the *Haywood* line of cases, not pursuant to a discretionary clause or contract term. *See e.g.* FAC, Ex. 8. *Haywood* and its progeny have held that an employee who is terminated for cause is generally not eligible for disability retirement benefits. *See Haywood v. Am. River Fire Protection Dist.*, 67 Cal. App. 4th 1292, 1297 (1998) ("where, as here, an employee is fired for cause and discharge is neither the ultimate result of a disabling

18

medical condition nor preemptive of an otherwise valid claim for disability retirement, termination of the employment relationship renders the employee ineligible for disability retirement"). Because California case law is applicable to all California contracts, *Haywood* may be a valid basis for denying Richter's disability benefits application, even though it is not listed or identified as a term in her contract. Further, *Haywood* is a generally applicable legal standard, not a "discretionary clause." Accordingly, I conclude that this claim is futile and I will not grant Richter leave to add this claim.

### K.   Claim 13 – Violation of California APA and 5 U.S.C. § 702(1) By Failing to Make Disability Determination

Richter's thirteenth claim asserts violations of the California and federal Administrative Procedure Acts ("APA"). FAC ¶¶ 223-227. Because neither of these statutes is applicable to the facts here, I conclude this claim is futile. Richter's motion for leave is denied as to claim thirteen.

The California APA sets forth procedures that California state agencies must follow when enacting "regulations," defined as "every rule, regulation, order, or standard of *general application*, or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure." Cal. Gov. Code §§ 11342.600 (emphasis added). The denial of Richter's application for disability pension benefits is not a "regulation" under the statute as it does not have any general application – it was a single decision applicable only to Richter. As a result, this determination was not subject to the California APA. In addition, 5 U.S.C. § 702, the federal APA, applies only to federal agency action, and is thus not applicable to the City of Oakland. *See* 5 U.S.C. § 551(1) (noting that the APA applies to "each of authority of the Government of the United States"). As neither the California APA nor the federal APA are applicable to the alleged conduct in this action, this claim is futile.

Accordingly, Richter's motion for leave is denied as to claim thirteen.

### L.   Claim 15 – Fraudulent Inducement

Richter's fifteenth claim for relief is a fraudulent inducement claim against Kasaine, in her individual and official capacities, as well as the City of Oakland. To state a claim for fraudulent

United States District Court
Northern District of California

19

inducement under California law, a plaintiff must allege "(a) a misrepresentation, false representation, concealment or nondisclosure; (b) knowledge of falsity; (c) intent to defraud or to induce plaintiff to enter into a contract; (d) justifiable reliance; and (e) resulting damage." *Cream v. Northern Leasing Systems, Inc.*, Case No. 15-cv-01208-MEJ, 2015 WL 4606463, at *5 (N.D. Cal. July 31, 2015). Richter alleges that Kasaine induced her to sign a time waiver regarding her disability pension application by telling her that the City did not have the necessary medical records to make a determination as to her disability. FAC ¶ 48; FAC, Ex. 2. She further alleges that this was false, that the City had all the necessary medical records, and in truth declined to process her application because of her pending internal investigation proceedings. *Id.* ¶¶ 50-53. She alleges that Kasaine misled her to induce her into signing the time waiver and asserts that had she not signed the time waiver the City would have had to certify her disability and her pension would have been granted. *Id.* ¶ 235.

Although much of Richter's claim is plausible, her allegations fail to adequately allege an injury resulting from the alleged misrepresentation from Kasaine. Richter conclusorily states that the City would have been forced to confirm her disability had she not signed the time waiver. FAC ¶ 235. But Exhibit 2 to the FAC, which appears to be the time waiver Richter was asked to sign, states that "[i]n the event a hearing to make a final determination on the application for Industrial Disability Retirement cannot be completed by August 30, 2019, the application for disability retirement may be administratively canceled by CalPERS." *Id.*, Ex. 2. This language contradicts the idea that Richter's claim would have been processed and granted had she not signed the time waiver – instead it presents the alternate possibility that her application would have been administratively closed. In addition, Richter alleges that an attorney for the City of Oakland told her that her disability application had been paused "awaiting the finalization of the internal affairs investigation and its conclusion/results." FAC ¶ 53. This statement indicates that the City of Oakland viewed Richter's internal investigation as a valid reason to delay processing her application and suggests that Oakland would have delayed making a disability determination regardless of whether Richter signed the time waivers. Because it appears, based on Richter's allegations, that her disability application would have been terminated or denied even if she had

not signed the time waivers, she has failed to allege an injury to support this claim.

Accordingly, this claim appears futile and Richter's motion for leave is denied as to claim fifteen.

### M.      Claim 16 – Breach of Fiduciary Duty

Richter's sixteenth claim asserts a breach of fiduciary duty against defendants Kasaine, Falk, Stanfield, Trinh, Jenkins, Byrd-Salas, and Riddle in their official capacities as well as the City of Oakland.  However, Richter has failed to adequately allege the existence of any fiduciary duty or a breach by any individual with such a duty.  As a result, I conclude this claim is futile and Richter's motion for leave is denied as to claim sixteen.

To plead a breach of fiduciary duty, a plaintiff must adequately allege the existence of a fiduciary relationship and its breach.  *Masters v. San Bernadino County Employees Ret. Assn.*, 32 Cal. App. 4th 30, 44 (1995).  Richter alleges that "The City of Oakland Retirement Commission is charged with the administration, management, and operation of the City of Oakland's police retirement system" and that this creates a fiduciary duty.  FAC ¶ 237.  California courts have held that pension associations, their board members, and possibly other high-level administrators of pension funds owe a fiduciary duty to beneficiaries as well as employees applying for benefits.  *See Id.* ("The law supports the allegation of a fiduciary duty owed to applicant, as a member of the retirement system, by the board members who undertake by their acceptance of office to be voluntary trustees), and possibly by miller as an administrator of the Association.").  However, mere employees of the association or bureaucratic employees do not have a fiduciary relationship with beneficiaries.  *Id.*  Further, although Richter asserts that the "City of Oakland Retirement Commission is charged with the administration, management, and operation of the City of Oakland's police retirement system" her other allegations and the exhibits she has attached to the FAC indicate that CalPERS is the relevant pension association to which she submitted her application for disability benefits and which ultimately rejected her application.  *See e.g.*, FAC ¶ 34 ("When Julia submitted her CalPERS disability retirement application . . .");  FAC, Ex. 8 (application rejection letter from CalPERS).  It therefore appears CalPERS, and CalPERS board members and/or high-level administrators are the relevant potential fiduciaries in this case.

United States District Court
Northern District of California

1    Here, it is apparent that most of the defendants this claim is directed to do not have a

2    fiduciary relationship with Richter.  Steven Falk is an "Interim City Administrator for the City of

3    Oakland" FAC ¶ 13, who Richter alleges sent her a letter in March 2020, notifying her of her

4    termination, *id.* ¶ 45.  Richter alleges that Steven Falk is the individual, under statute, who is

5    charged with determining whether she is disabled for purposes of qualifying for disability benefits.

6    *Id.* ¶ 58.  While this appears to be supported by Cal. Gov. Code § 21154, which states that, with

7    respect to local safety officers, CalPERS "shall request the governing body of the contracting

8    agency employing the member to make the determination [as to disability]," it does not follow that

9    this creates a fiduciary relationship between Falk and Richter.  The fiduciary relationship between

10    CalPERS and Richter arises out of CalPERS's role as the manager and administrator of her

11    employee pension fund.  While Falk and/or other Oakland personnel may participate in

12    determining whether Richter is disabled, which may in turn impact her entitlement to benefits,

13    these individuals have not taken on the same fiduciary role.  Accordingly, Richter's allegations are

14    insufficient to establish a fiduciary relationship with Falk.  For the same reasons, her allegations

15    are insufficient to establish a fiduciary relationship with the City of Oakland.

16    Richter alleges that Greg Stanfield is an attorney for the City of Oakland, *id.* ¶ 15, who told

17    her in July 2019, that her disability application determination was "awaiting the finalization of the

18    internal affairs investigation and its conclusion/results" *id.* ¶53.  As an attorney for the City of

19    Oakland it is clear that Stanfield did not have a fiduciary relationship with Richter, who was

20    adverse to his client.

21    Katano Kasaine is a "Finance Director assigned to Retirement Unit for the City of

22    Oakland," *id.* ¶ 14, who allegedly sent Richter two letters indicating that her application for

23    disability benefits could not be processed within the six-month statutory time period and

24    requesting that Richter sign time waivers, *id.* ¶¶ 48, 51.  It does not appear from these allegations

25    that Kasaine is a CalPERS employee and Richter has not alleged other facts that would give rise to

26    a fiduciary relationship between her and Kasaine.

27    Jessica Byrd-Salas is an "Associate Governmental Program Analyst at Disability

28    Retirement, CalPERS."  *Id.* ¶ 18.  Richter does not make any allegations as to Byrd-Salas's

involvement, but attaches Exhibit 9, an email chain, which shows that Byrd-Salas requested a copy of Richter's Skelly report from Teir Jenkins in April 2020. *Id.*, Ex. 9. This exhibit suggests that Byrd-Salas is a bureaucratic employee at CalPERS, not a fiduciary.

Richter alleges that Teir Jenkins is a "member of Local Safety program at Disability Retirement, CalPERS." *Id.* ¶ 17. Richter makes no other allegations about Jenkins, but Exhibit 9 to the FAC indicates that Jenkins sent Richter's Skelly report to Byrd-Salas at Byrd-Salas's request. *Id.*, Ex. 9. This suggests that Jenkins is a bureaucratic employee, not someone likely to have a fiduciary relationship with Richter. Exhibit 9 also suggests, contrary to Richter's allegations, that Jenkins is a City of Oakland employee, not a CalPERS employee, as Jenkins has an "@oaklandca.gov" email address. *Id.* As noted above, Richter has not alleged any facts to support a finding that the City of Oakland or its employees had a fiduciary duty to her.

Sophia Trinh is an employee in the "Special Programs Unit at Disability Retirement, CalPERS," *id.* ¶ 16 and wrote an email to Jenkins on July 7, 2020, stating that "We have made a determination of not accepting [Richter's] IDR application due to Haywood," *id.* ¶ 55. While Richter suggests that Trinh is a high-level decisionmaker at CalPERS due to her use of the word "we" in the email, her title and email exchange with Jenkins and Byrd-Salas instead suggests that, like Byrd-Salas, she is a bureaucratic employee, not a fiduciary.

The only defendant who might have a fiduciary relationship with Richter is Keith Riddle, who Richter alleges is the "Chief for Disability and Survivor Benefits Division at CalPERS" *id.* ¶ 19, and who sent Richter a letter in May 2020, notifying her that "CalPERS cannot accept your application for disability retirement" because she had been fired for cause *id.* ¶ 45. However, even if Richter could establish a fiduciary relationship between her and Riddle, she has not alleged any facts to support an inference that Riddle breached any such duty. She alleges only that Riddle sent her a letter notifying her that her application had been rejected due to her dismissal for cause under *Haywood*. *Id.* ¶ 45, 51. Richter does not dispute that *Haywood* generally allows a pension plan to deny an application for disability retirement if an employee is fired for cause. The focus of her allegations is that processing of her application was improperly delayed until after her termination so that *Haywood* would apply. But Richter has not alleged that Riddle had any involvement in

23

United States District Court
Northern District of California

1  processing her application or in the decision to delay determination of her application until after

2  her termination.  Richter's allegation that Riddle sent her the letter denying her application is not

3  sufficient to allege a breach of any fiduciary duty Riddle might have to Richter.

4        Because Richter's claim for breach of fiduciary duty does not appear viable, and it does not

5  appear that Richter can allege a fiduciary relationship and breach with any of the defendants,

6  Richter's motion for leave is denied as to this claim.

7        **N.      Claim 17 – California Disabled Persons Act; Unruh Civil Rights Act**

8        Richter's seventeenth cause of action asserts claims under the California Disabled Persons

9  Act ("CDPA") and California's Unruh Civil Rights Act on the basis that both statutes create a

10  California cause of action for violations of the federal ADA, which Richter has separately alleged.

11  FAC ¶ 241; *see also* Cal Civ. Code § 51(f) ("A violation of the right of any individual under the

12  federal Americans with Disabilities Act of 1990 [] shall also constitute a violation of this

13  section."); Cal. Civ. Code § 54.1(d) (same).  This claim fails both because Richter has failed to

14  adequately allege an ADA violation and because these statutes do not apply to ADA claims arising

15  out of employment discrimination.

16        As discussed above, Richter's ADA claim, brought under Title II of the ADA, fails

17  because Title I provides the ADA's exclusive vehicle for challenging employment discrimination.

18  Her CDPA and Unruh Act claims, which rely on an underlying ADA violation, therefore fail for

19  this reason.

20        In addition, these claims fail because they provide a cause of action only for ADA claims

21  relating to physical barriers – they do not apply to employment discrimination.  Although the

22  language of the CDPA and Unruh Act suggest that these statutes may incorporate any ADA

23  violation, including employment discrimination, the Ninth Circuit held in *Bass v. County of Butte*,

24  458 F.3d 978, 983 (9th Cir. 2006) that both statutes incorporate "only those provisions of the ADA

25  that are germane to the statutes' original subject matter," – equal access to public accommodations

26  – and do not incorporate the ADA's prohibitions against employment-related discrimination.  The

27  Ninth Circuit's holding in *Bass* is consistent with earlier California and Ninth Circuit precedent,

28  holding that the Unruh Civil Rights Act does not cover employment discrimination or claims

1   arising out of an employment relationship.  *See Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493,

2   500 (1970) (holding that plaintiff's race-based employment discrimination claim was not covered

3   by Unruh Act); *Rojo v. Kliger*, 52 Cal.3d 65, 77 (1990) ("the Unruh Civil Rights Act has no

4   application to employment discrimination"); *Sprewell v. Golden State Warriors*, 266 F.3d 979,

5   989 (9th Cir. 2001) (dismissing Unruh Act claim where plaintiffs' complained of "punishments

6   stemmed from his employment relationships" with defendants).  Because plaintiff's ADA claim

7   arises out of her employment relationship with OPD, it does not fall within the scope of the CDPA

8   or the Unruh Civil Rights Act.

9       For these reasons, Richter's seventeenth claim is futile and Richter's motion for leave is

10  denied as to this claim.

### O.   Claim 20 – Violation of 28 U.S.C. 2464 and 18 U.S.C. 3282

12      Richter's twentieth claim for relief asserts that OPD's investigation and disciplinary action

13  against her was not brought within the five-year federal statute of limitations for certain civil or

14  criminal enforcement actions.  Because neither of these statutes of limitations applies to OPD's

15  internal investigation and termination action against Richter, this claim is futile.  Richter's motion

16  for leave is denied as to claim twenty.

17      Richter asserts that OPD's investigation failed to comply with the five-year statute of

18  limitations for "an action, suit or proceeding for the enforcement of any civil fine, penalty, or

19  forfeiture, pecuniary or otherwise" laid out in 28 U.S.C. 2462.  FAC ¶ 253.  Alternatively, she

20  asserts that if OPD's action was criminal in nature, it failed to comply with the five-year statute of

21  limitations set out in 18 U.S.C. 3282.  *Id.* ¶ 204.  This claim fails because 28 U.S.C. 2462 and 18

22  U.S.C. 3282 are statutes of limitations that govern the time for the federal government to bring

23  certain civil and criminal actions in federal court.  They do not apply to state or municipal

24  administrative and employment actions.  *See Erie Basin Metal Products, Inc. v. U.S.*, 138 Ct. Cl.

25  67, 74 (1957) ("The limitation of section 2462 applies only to actions instituted by the

26  Government."); *Bertha Building Corp. v. National Theatres Corp.*, 269 F.2d 785, 788-89 (2d Cir.

27  1959) ("The federal statute of limitations for penal cations [sic] applies only to actions on behalf

28  of the United States and qui tam actions."); *See Musacchio v. United States*, 136 S.Ct. 709, 718

(2016) (explaining that § 3282 creates an affirmative defense that a criminal defendant must specifically invoke in a criminal action).  As a result, neither of these statutes applies to OPD's internal investigation and disciplinary action against Richter.

Because this claim appears futile, Richter's motion for leave is denied as to claim twenty.

### P.	Claim 21 – Violation of Mandatory Duty Under 18 U.S.C. 3282(a)

Richter's twenty-first claim asserts that OPD violated various criminal procedure and jurisdictional rules by terminating her for alleged violations of criminal law.  FAC ¶¶ 265-273.  As I have held before, these procedural rules and standards apply to criminal proceedings, and occasionally civil enforcement actions.  They do not apply to OPD's internal investigations or to disciplinary actions against officers.  Richter was not charged with a crime, nor was she found guilty of committing a crime.  Accordingly, these various rules and requirements are not applicable and do not give rise to any actionable claim for relief.  Accordingly, Richter's motion for leave is denied as to claim twenty-one.

### Q.	Claim 25 – Violation of Peace Officer's Bill of Rights

Richter brings a claim based on an alleged violation of the Peace Officer's Bill of Rights because she was terminated more than one year after OPD discovered the alleged misconduct for which she was dismissed.  I previously dismissed this claim with prejudice for the reasons outlined in my July 2020 Order.  *See* Dkt. No. 47 at 10-11.  Richter argues that my prior dismissal focused on the fact that Peace Officer Bill of Rights claims are not cognizable against individuals, and asserts that her claim may still be brought against the City of Oakland.  MTA at 6.  Although this was one of the reasons I dismissed Richter's prior Peace Officer's Bill of Rights claim, in my prior Order I noted additional fatal flaws warranting dismissal, including that Richter's allegations indicated that "the statute of limitations was tolled based on her criminal investigation." Dkt. No. 47 at 11.  Accordingly, for the same reasons discussed in my July 2020 Order, Richter's Peace Officer's Bill of Rights claim is not viable and is futile.  For these reasons, Richter's motion for leave is denied as to claim twenty-five.

**R.     Claim 26 – Cal. Gov. Code § 1094.5 – Request to Set Aside Unlawful Administrative Action**

In her twenty-sixth claim for relief, Richter cites to California Government Code § 1094.5. FAC ¶¶ 286-288.  Richter appears to be invoking Cal. Gov. Code § 1094.5 for the purpose of exhausting judicial remedies.  *Id.*  The Ninth Circuit has held that a plaintiff must file a § 1094.5 petition either in state or federal court to exhaust judicial remedies when challenging a California administrative decision.  *See Doe v. Regents of the University of California*, 891 F.3d 1147, 1154-1155 (9th Cir. 2018).  Accordingly, I will allow Richter to assert this claim here for this purpose. However, this claim is limited to the extent it is challenging the administrative actions relevant to Richter's other remaining potentially viable claims.

## CONCLUSION

For the reasons stated above, Richter's motion for leave is GRANTED as to claims one, three (to the extent it asserts an equal protection claim on the basis of disability discrimination), four, and twenty-six.  It is DENIED as to all other claims, including claim three as far as the claim asserts an equal protection claim on the basis of national origin or gender discrimination.  To be clear, while this Order allows certain claims to be pleaded in an amended complaint, nothing in this Order restricts defendants from moving to dismiss if appropriate.

Richter is ordered to file, no later than **March 3, 2021**, a revised complaint <u>limited</u> to claims one, four, twenty-six, and claim three's disability discrimination theory.  No further amendments are permitted.  Richter's revised complaint must be <u>limited</u> to the defendants named in claims one, four, twenty-six and three. All other defendants or proposed defendants are dismissed with prejudice.  Richter must ensure that all remaining defendants have been properly served no later than **March 31, 2021**.  A further Case Management Conference is set for **June 15, 2021 at 2 p.m.**

**IT IS SO ORDERED.**

Dated: February 16, 2021

William H. Orrick
United States District Judge

United States District Court
Northern District of California