UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA RICHTER,<br><br>        Plaintiff,<br><br>      v.<br><br>LISA AUSMUS, et al.,<br><br>        Defendants. | Case No. 19-cv-08300-WHO<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT AND TO DISMISS**<br><br>Re: Dkt. Nos. 105, 164, 167 |

Defendants' motion to dismiss and cross-motion for summary judgment are GRANTED in part and DENIED in part. Plaintiff Julia Richter's motion for summary judgment is DENIED. For the reasons explained below, the only claims remaining in this case are Richter's 42 U.S.C. section 1983 claims for denial of procedural due process and violation of the Takings Clause; both are based on the defendants' apparent delay in processing her industrial disability retirement ("IDR") application. As noted below, the only damages that appear to be at issue – based on Richter's often-amended pleadings – are interest from the last day she was on the City of Oakland's payroll (around March 28, 2020) through the date her IDR benefits were granted (in January 2023) and perhaps some limited other damages that plaintiff suffered as a result of the City's delay in processing her IDR application.

Given the significant narrowing of this case, proceedings are HEREBY STAYED until the parties attend a settlement conference with Magistrate Judge Thomas S. Hixson. If it is unsuccessful, the stay will be lifted to allow for three months of discovery followed by motions for summary judgment and, if necessary, a trial.

**BACKGROUND**

**I.    ADMINISTRATIVE AND FACTUAL BACKGROUND**

The facts of this case have been discussed in detail in prior Orders. *See, e.g.*, Dkt. Nos. 28,

75, 115. Richter, a former employee of the Oakland Police Department ("OPD"), alleges two primary sources of misconduct on the part of the defendants. First, she alleges that she was injured on May 14, 2018 by the Oakland Police Department ("OPD") and the City of Oakland (the "City") due to its indifference and violation of safety rules. Dkt. No. 76 ("Fourth Amended Complaint" or "FAC") ¶¶ 30, 38. Second, she asserts that she was subject to a wrongful investigation in order to prevent her from obtaining disability retirement benefits ("Industrial Disability Retirement" or "IDR"), which ultimately resulted in her termination. *Id*. ¶ 32.

When Richter initially filed this action, she had not yet been terminated and her IDR application was still pending. Then in April 2020, Richter received a letter from defendant Falk, then Oakland's City Administrator, notifying her that she had been terminated as of March 28, 2020. *Id*. ¶ 40. A few weeks later, in May 2020, she received a letter from defendant Keith Riddle, the Chief for the Disability and Survivor Benefits Division at CalPERS, notifying her that her application for IDR benefits could not be accepted because she had been terminated for cause. Dkt. No. 76-7 ("FAC, Ex. 8").

Richter appealed the denial of her IDR benefits. Following a hearing before the Office of Administrative Hearings ("OAH"), an Administrative Law Judge ("ALJ") concluded that the City should have processed Richter's IDR application and failed to do so timely. Dkt. No. 164-5. Applying principles of equity, the ALJ determined that Richter's IDR application should be processed by the City, despite her subsequent termination. *Id*. After Richter allowed the City additional time to process her IDR application, the City eventually forwarded the application to CalPERS, on January 13, 2023 and CalPERS approved Richter's IDR application and paid her IDR benefits back to March 28, 2020. Dkt. No. 167-1 (Declaration of Jocelyn Burton), Exs. 5, 7.

## II.     PROCEDURAL BACKGROUND

On March 30, 2020, I granted defendants' initial motion to dismiss, dismissing plaintiff's without prejudice and with leave to amend the following claims:

- Substantive and Procedural Due Process claims (Eleventh, Twelfth, and Thirteenth causes of action);

- Excessive Force claims (based on Fifth or Fourteenth Amendment rights, as alleged in the

2

First and Second causes of action);

- Retaliation claims (Seventh, Eighth, and Ninth causes of action);
- Supervisory Liability claims (Fourteenth and Fifteenth causes of action);
- Claims under 42 U.S.C. § 1985 and §1986 (Fourth, Sixth, and Sixteenth causes of action);
- Negligent infliction of emotional distress, battery, and negligence claims (Eighteenth, Nineteenth, and Twentieth causes of action).

I also dismissed the following claims WITH PREJUDICE:

- Claims regarding fabrication of evidence, *Brady* violations, malicious prosecution, and making false public statements (Third, Fifth, Tenth, and Seventeenth causes of action); and
- A standalone cause of action for punitive damages.

*See generally* March 2020 Order, Dkt. No. 28.[1]

Plaintiff filed a Second Amended Complaint ("SAC"), and defendants moved again to dismiss. In my July 2020 Order, I denied the request to dismiss Richter's Fifth Cause of Action, alleging a right to IDR benefits. July 2020 Order, Dkt. No. 47, at 8. I then explained how Richter failed to cure the defects that led to my prior dismissal of most her claims and noted that Richter had alleged additional claims in her SAC without leave to amend. *Id*. As a result, I dismissed Richter's Denial of Equal Protection claims (Seventh and Eighth causes of action). While I gave Richter further leave to amend to allege facts to support her equal protection claim based on disability discrimination, I dismissed her equal protection claim to the extent it was based on gender or national origin discrimination as unsupported and implausible. *Id*. at 10-12. I dismissed numerous other claims with prejudice.[2] *See generally* July 2020 Order.

---

[1] I denied Richter's motion for reconsideration of the dismissal with prejudice of these claims. Dkt No. 37.

[2] The claims dismissed with prejudice were: (1) State-created Danger (First cause of action); (2) Excessive Force and Failure to Train (Second cause of action); (3) Criminal punishment (Third cause of action); (4) Substantive Due Process/Fabrication of Evidence (Fourth cause of action); (5) Retaliation in violation of the First Amendment (Sixth cause of action); (6) Conspiracy claims under 42 U.S.C. §1986 and failure to train or prevent under 42 U.S.C. §1985(3) Conspiracy (Ninth cause of action); (7) Fourteenth Amendment Procedural Due Process right arising under Police Officers Bill of Rights (Cal. Gov. Code § 3300) and violation of Police Officer Bill of Rights (Tenth and Twelfth causes of action); (8) Retaliation for filing workers compensation claim (Eleventh cause of action); and (9) Negligent and intentional infliction of emotion distress

3

At that juncture, the only claims surviving were the equal protection based on disability discrimination and substantive due process right to IDR claims. *Id*. After I repeatedly extended the time for Richter to file her amended complaint, Richer filed her Third Amended Complaint on September 29, 2020, and shortly thereafter she moved to further amend her complaint. Dkt. Nos. 54, 55. Defendants again moved to dismiss and to strike new claims and newly added defendants that Richter was not given permission to add. In my November 2020 Order, Dkt. No. 65, I gave Richter a choice; she could either proceed by filing a Fourth Amended Complaint limited to the fifth (denial of IDR), seventh (denial of equal protection), and eighth (denial of equal protection) causes of action asserted in the SAC as to the original defendants or Richter could file a motion seeking leave to file a Fourth Amended Complaint to add the claims and parties she attempted to include.

Richter chose to file a motion for leave, seeking to add twenty-four new claims and several new defendants, and defendants opposed. Dkt. Nos. 68. 69. In my February 2021 Order, Dkt. No. 74, I concluded that most of the proposed new claims were futile and, accordingly, denied the motion to amend as to those claims.[3] However, I granted Richter's motion in part, allowing the following claims to proceed: (1) violation of § 1983 under the Fourteenth Amendment based on denial of Procedural Due Process rights to IDR benefits (First cause of action); (2) violation of §

---

(Thirteenth cause of action). *Id*. These rulings removed from this case Richter's claim for damages due to her physical injuries due to Oakland's alleged indifference and violation of safety rules.

[3] The futile claims were (1) Violation of § 1983 Conspiracy to Deprive Plaintiff of Rights to Disability Pension, Public Employment and Liberty Interest in Public Employment, in Violation of Due Process; (2) Federal and California Promissory Estoppel to Pay Disability Pension Upon Disability Injury; (3) Violation of Americans With Disabilities Act, Title II; (4) Violation of §1983 based on Violation of Due Process Regarding Deprivation of Right to Public Employment, Benefits and Stigma Plus in Violation of Fourteenth Amendment; (5) Violation of § 1983 under Fourteenth Amendment Due Process Right to be Free From State Created Danger & Right to Bodily Integrity; (6) violation of California's Bane Act § 52.1 and Cal. Civ. Code § 52.3(a), Cal. Gov. Code § 815.2; (7) Violation of Mandatory Duty Under Cal. Gov. Code §§ 21151-21157, Cal. Ins. Code § 10110.6, and Breach of Contract; (8) Violation of California APA and 5 U.S.C. § 702(1) By Failing to Make Disability Determination; (9) Fraudulent Inducement; (10) Breach of Fiduciary Duty; (11) California Disabled Persons Act; Unruh Civil Rights Act; (12) Violation of 28 U.S.C. § 2464 and 18 U.S.C. § 3282; and (13) Violation of Mandatory Duty Under 18 U.S.C. § 3282(a); (14) Violation of Peace Officer's Bill of Rights. Dkt. No. 74.

4

1983 under Equal Protection Clause based on disability discrimination (Third cause of action); (3) violation of § 1983 based on Unlawful Taking of Disability Pension in Violation of Fifth and Fourteenth Amendments (Fourth cause of action); and (5) violation of Cal. Gov. Code § 1094.5 and Request to Set Aside Unlawful Administrative Action (Twenty-Sixth cause of action). I also limited the defendants remaining in the case to those involved only in each of those remaining causes of action and expressly warned Richter that no further amendments would be permitted. Dkt. No. 74 at 27.

Plaintiff filed her revised Fourth Amended Complaint ("FAC") on March 16, 2021. Like her prior amended complaints, the FAC contained more allegations, claims, and defendants than Richter had been given leave to include. Dkt. No. 80. Defendants filed another round of motions to dismiss and strike, and Richter filed a motion for leave to file a Fifth Amended Complaint. In my July 2021 Order, given the fact that the parties acknowledged that Richter's appeal of the denial of her application for IDR was going to be heard at the OAH by an ALJ, I stayed the case pending the final determination of Richter's ability to apply for and receive IDR benefits. Dkt. No. 115. I denied Richter's motion for leave to amend to file additional claims and name additional defendants and I stayed her request to further amend her equal protection claim. *Id*.[4]

In sum, at this juncture the only claims that are pending are: (1) violation of § 1983 under the Fourteenth Amendment's Procedural Due Process protection given Richter's deprivation of her IDR; (2) violation of § 1983 under the Fourteenth Amendment given the denial of Equal Protection (including Richter's pending motion to amend the bases for her Equal Protection claim and add facts regarding disability discrimination); (3) violation of § 1983 under the Fifth and Fourteenth Amendments based on an Unlawful Taking of her IDR benefits; and (4) violation of Cal. Gov. Code § 1094.5 and Request to Set Aside Unlawful Administrative Action.

Also pending is the Oakland defendants' motions to dismiss. In the July 2021 Order with respect to Richter's Section 1983 Due Process "right" to IDR benefits, I indicated that once the ALJ hearing occurred "and has sufficient elements of due process, then it would seem that Richter

---

[4] I also denied Richter's motion for sanctions.

5

will have been afforded adequate process." July 2021 Order at 7. On Richter's Equal Protection claim, I deferred the question of whether to grant Richter leave to add missing facts to support a claim of denial of equal protection based on disability discrimination, as it was unclear what impact if any the OAH/ALJ hearing might have on this claim. *Id*. at 8. On her Takings Claim, I noted that Richter had plausibly alleged both a vested interest in her IDR benefits as well as an improper withholding of those benefits, but noted that the final administrative decision had not been made. *Id*. at 9. Finally, addressing the Cal. Govt. Code § 1094.5 claim, I rejected the defendants' argument that a Section 1094.5 claim could only be brought in state court and expressly allowed Richter to assert that claim "to the extent it is challenging the administrative actions relevant to Richter's other remaining claims." *Id*. at 9. But I noted that because final administrative action had not yet occurred, there was no decision for Richter to challenge. *Id*.

Addressing Stanfield's motion to dismiss, I noted that *Younger* abstention was not warranted because this case was initiated before the state administrative proceedings. *Id*. at 10. I also declined to reach the question of whether Richter had adequately alleged standing/harm stemming from Stanfield's actions, given that Richter's injury depended on the OAH's final determination. Therefore, I stayed Stanfield's motion to dismiss with respect to the standing question.

After the ALJ determination requiring Oakland to process her IDR application, Richter moved for an immediate answer on that IDR application. I denied that request in June 2022. Dkt. No. 137. During this same timeframe, I denied Richter's motion to disqualify me and held numerous Case Management Conferences seeking to keep this case on track and ensure that Oakland and CalPERS were moving forward on Richter's application. *See* Dkt. Nos. 139, 146, 150, 154.

On December 21, 2022, Richter moved for partial summary judgment on the issue of industrial disability retirement. Dkt. No. 155. That motion was denied "without prejudice as premature in advance of the final determination by CalPERS." Dkt. No. 161. Following the grant of her IDR benefits, Richter again filed a motion for partial summary judgment on the issue of industrial disability retirement. Dkt. No. 164. Having asked the parties to identify the most

6

efficient way forward, and discussing their perspectives during a January 2023 Case Management Conference, I identified "the core remaining issue as whether Ms. Richter has a cognizable claim for damages resulting from the City's delay." Dkt. No. 165. I noted Richter's pending motion for partial summary judgment and Stanfield's pending motion to dismiss, and set a briefing schedule on each, including a cross-motion for summary judgment by the City. *Id*. I explained that "[i[f any party believes that additional discovery is necessary to defend against any motion, they shall include the reasons why it is necessary in their opposition to said motion." *Id*.

Now before me are Richter's motion for partial summary judgment, the City of Oakland defendants' cross-motion for summary judgment, and Stanfield's renewed motion to dismiss.

## LEGAL STANDARD

### I.   MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether a claim has been stated upon which relief can be granted, the court accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," however, need not be "accept[ed] as true." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation omitted).

If the court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## II. MOTION FOR SUMMARY JUDGMENT

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

### I. STANFIELD'S MOTION TO DISMISS

Richter makes the following allegations regarding Stanfield in the operative FAC:

8

1   - He "was [] personally involved City Attorney for the City of Oakland. Stanfield advised
2     Falk and others not to follow Cal. Gov. Code §21151-21157, Cal. Ins. Code §10110.6, or
3     the 14th Amendment, thus materially contributing to constitutional violations described in
4     this Complaint." FAC ¶ 15.
5   - "On July 27, 2019 Julia asked Oakland City Attorney Gregory Stanfield whether the City
6     has all the medical documents, and if there is anything else that prevents him from making
7     the disability determination. On July 29, 2019, Stanfield replied that Julia's industrial
8     disability retirement application and its processing is 'awaiting the finalization of the
9     internal affairs investigation and its conclusion/results.' (EXHIBIT 6). Stanfield is
10    personally liable for denying processing Julia's disability application." FAC ¶ 65; *see also*
11    ¶ 70.
12  - Defendants Falk, Kasaine, Stanfield, Trinh, Jenkins, Byrd-Salas, Riddle (Defendants #1)
13    individually took part in intentionally failing to timely certify Julia's disability and to retire
14    Julia." FAC ¶ 113.
15  - "As of July 27, 2019, Oakland City Attorney Stanfield wrote to Julia that the investigation
16    has not been completed. The City of Oakland presented Julia with 'completed' report of
17    investigation on October 1, 2019, which is over one month past Cal. Gov. Code 3304(d)(1)
18    one-year Statute of Limitation." FAC ¶ 153.
19  - "Stanfield advised Kasaine and Falk on the ways to deprive Julia of her employment
20    benefits." FAC ¶ 227.

In his motion to dismiss, Stanfield contends that he is an attorney at a private law firm who was retained by the City to provide a non-litigation assessment of the City's disability retirement program. Dkt. No. 105. In his Supplemental Brief, Stanfield contends that CalPERS has the "sole authority to accept or deny the IDR application." Supp. Br., Dkt. No. 168 at 3. Stanfield also asserts that his "only role was to provide assessment on the internal procedures for the City's processing of disability retirement benefits. Stanfield does not make decisions on individual applications for retirement benefits." *Id.*

Stanfield moved to dismiss, initially arguing that Richter's claims for relief are barred

1    under the *Younger* doctrine given the administrative proceedings. He also contended Richter lacks
2    standing to assert her claims against him because there is no causal chain between Stanfield's
3    limited actions on behalf of Oakland and Richter's alleged harms.
4        In my July 2021 Order, I rejected the *Younger* argument and deferred ruling on the
5    standing issue because Richter's IDR application was still pending. July 2021 Order, Dkt. No.
6    115.[5] In his Supplemental Brief, Stanfield reasserts the lack of standing argument: namely, that
7    whatever role Stanfield had with Oakland's initial processing of Richter's IDR application – the
8    application that was not timely processed and was cancelled and not sent to CalPERS because of
9    Richter's termination – any causal chain was cut off because there are no facts alleged that
10   Stanfield had any input in or control over what CalPERS did and CalPERS has the "sole authority
11   to accept or deny the IDR application." Supp. Br., Dkt. No. 168 at 3. Stanfield also asserts that
12   his "only role was to provide assessment on the internal procedures for the City's processing of
13   disability retirement benefits. Stanfield does not make decisions on individual applications for
14   retirement benefits." *Id*.
15       Richter, however, has made allegations and attached emails to her complaint (that are
16   subject to judicial notice) showing that Stanfield was aware of Richter's IDR application and may
17   have played a role in holding up the processing of the application until the internal investigation
18   into misconduct was concluded by Oakland. *See, e.g.,* FAC, Ex. 6. Because this is a motion to
19   dismiss, and there is no basis to take judicial notice or otherwise rely on the contentions Stanfield
20   makes in his Motion and Supplemental Brief.
21       Stanfield raises an additional argument in his Supplemental Brief that Richter's claim
22   against him as an attorney hired by Oakland is barred under "the *McDermott* doctrine." *See*
23   *McDermott, Will & Emery v. Superior Court*, 83 Cal.App.4th 378, 381 (Cal.App.2.Dist)
24   (recognizing that "a derivative lawsuit for malpractice against corporate outside counsel raises
25   unique attorney-client privilege issues" because the "absence of a waiver by the corporate client,

---

[5] Stanfield also initially argued and argues in his Supplemental Brief that Richter's claims for violations of Due Process, Equal Protection, Takings and Cal. Code of Civ. Proc. § 1094.5 all fail. Those arguments are identical to ones raised by the Oakland Defendants and are addressed below.

the third party attorney is effectively foreclosed from mounting any meaningful defense to the shareholder derivative action."). But this is not a case where a plaintiff's claim is obviously premised on attorney-client protected information. And even if it were, before dismissing a claim under this doctrine a trial court must consider "the interests of a plaintiff in bringing a potentially meritorious claim that is *not* premised on confidential information, in the course of determining whether a defendant's right to present a *defense* premised on confidential information requires dismissal of the claim." *Dietz v. Meisenheimer & Herron*, 99 Cal.Rptr.3d 464, 480, 177 Cal.App.4th 771, 791 (Cal.App. 4 Dist., 2009) (emphasis in original). What, if any, information possessed by Stanfield might be protected by the attorney-client interest is unclear. For example, advice he gave Oakland might be protected but information about his acts and his communications with Richter would likely not be protected. In his Supplemental Brief, Stanfield fails to identify or address the four factors that courts weigh to determine whether a case is barred under *McDermott*.[6] I cannot dismiss Richter's claims against Stanfield on this basis at this juncture.

Finally, Stanfield argues that the claims against him are moot now that Richter has received her IDR benefits, retroactive to the last day she was on Oakland's payroll in 2020. However, simply because she received the IDR benefits does not mean her other claims are moot given the allegations of improper handling and delay.

Stanfield's motion to dismiss is DENIED, except with respect to Richter's claims for denial of Equal Protection and violation of California Code of Civil Procedure § 1094.5 discussed below.

**II.    CROSS-MOTIONS FOR SUMMARY JUDGMENT**

    **A.    Due Process Right to IDR**

The Oakland defendants argue that summary judgment is warranted in their favor (and Stanfield argues his motion to dismiss should be granted) because Richter received adequate

---

[6] Those factors are: (1) whether the evidence is the client's confidential information, and the client is insisting that the information remain confidential; (2) whether the information is "highly material" to the claim; (3) whether "ad hoc" measures, including sealing and limited admissibility, could permit the action to proceed; and (4) whether it would be "fundamentally unfair" to allow the action to proceed. *Id*. at 792–94.

11

procedural process – the right to be heard – on her IDR application after she eventually made it to the OAH and the ALJ ruled in her favor. To state a procedural due process claim, a plaintiff must allege "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000). "'The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.'" *See Armstrong v. Reynolds*, 22 F.4th 1058, 1066–67 (9th Cir. 2022) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972)). "Key to a property interest determination is whether the person alleging a due process violation has an entitlement to the benefit at issue." *Armstrong*, 22 F.4th at 1067.

The essence of Richter's claim is that she was deprived of access to the IDR benefits when the defendants' delayed processing of her initial IDR application and then cancelled that application (and failed to send it to CalPERS) because they intended to terminate her employment and thereby avoid paying IDR benefits. In my February 2021 Order, I noted that if Richter could show that Oakland's decision to terminate her for cause was made to prevent her from obtaining disability benefits, she might be able to claim a procedural due process violation. *See, e.g.*, Dkt. No. 74 at 5-6.

Defendants argue that because Richter has now secured her benefits, any process to which she was entitled has been satisfied and this claim fails as a matter of law. Defendants, however, cite no cases in support of that proposition and fail to address Richter's claim that the improper delay in process creates liability and damages, including the interest due on the benefits that were eventually paid or for other damages she incurred during the long fight to have Oakland process her IDR application. For those reasons, the motions for summary judgment and to dismiss this claim are DENIED.

**B.     Equal Protection**

In the operative FAC, Richter alleges that she was denied equal protection on the basis of her disability when the City delayed processing her IDR application so it could find a way to deny her IDR benefits. FAC ¶¶ 57, 103, 108, 111. In my July 2021 Order, I noted that Richter had

omitted facts regarding equal protection in her FAC, but then attempted to add the facts back in in her proposed Fifth Amended Complaint. Dkt. No. 115.[7] I deferred ruling on the motion to include those facts back into the operative complaint, but for purposes of the pending motions, I assume that they are included in the operative complaint. As I indicated in my July 2021 Order, all of the facts she identifies regarding purported disability discrimination are "conclusory and speculative." *See* July 2021 Order at 7-8. Despite multiple opportunities to allege sufficient facts, Richter failed to identify which of the individual defendants (Ausmus, Mork, Millington, Kirkpatrick, Joshi, Allison or Falk) referred her but not her co-worker for an internal investigation (that led to Richter's termination) and Richter alleged no facts connecting the internal OPD investigation to any conduct by Stanfield or Kassine. *Id*.

These defects obviously remain. Unequal treatment based on disability still has not been adequately alleged against any of the individual defendants.[8] Considering Richter's allegations in a light most favorable to her, she alleges that Oakland delayed processing her IDR application in order to manufacture a reason to terminate her and avoid paying IDR benefits. Those allegations plausibly support a claim that Oakland was trying to get out of paying her IDR benefits. That is a plausible fiscal motive, not a disability discrimination motive. There are no facts alleged, despite Richter's numerous amended complaints and repeated attempts to amend further, that indicate any individual defendant acted with animus or made comments to her that could plausibly support a claim of discrimination *because of disability*.

---

[7] In the proposed Fifth Amended Complaint, Richter alleges that Ausmus, Mork, Millington, Kirkpatrick, Joshi, Allison, and Falk, as the City's investigative unit, treated Richter differently from other citizens OPD investigated on suspicion of criminal activity. Dkt. No. 80 ¶ 76. After Ausmus, Mork, Millington, Kirkpatrick and the City "became aware of [her] permanent work injury and her intent to apply for disability retirement, they began scrutinizing her in an apparent attempt to disallow her disability claim." *Id*. ¶ 111. And one defendant—who Richter only identifies as "Doe"—referred Richter "for an internal investigation for allegedly missing property, while her non-disabled coworker was not investigated." *Id*. Richter also alleges that in March 2019, her attorney "received a tip from an Oakland city employee . . . that the City wants to terminate Julia so that the City of Oakland would not have to pay her disability retirement." *Id*. ¶ 112.

[8] This is consistent with Stanfield's Supplemental Motion to Dismiss brief, where Stanfield argues Richter's equal protection based on disability claim should be dismissed as to him because Richter has not alleged facts plausibly showing that he or the other defendants took any discriminatory acts or acts amounting to deliberate indifference based on disability. Supp. Br. at 6-7.

13

1  Richter has had multiple opportunities to plead her equal protection claim. At this
2  juncture, summary judgment is granted to the defendants on this claim and it is dismissed from
3  this case WITH PREJUDICE.

**C.   Takings Clause**

The defendants also move to dismiss or seek summary judgment on Richter's Takings Clause claim. They argue that any possible claim is mooted because Richter has received her IDR benefits, with back pay to the last day she was on the City's payroll.

The defendants assert, first, that Richter's entitlement to IDR benefits was not "vested" before the IDR application was processed by Oakland and granted by CalPERS (following the ALJ decision requiring Oakland to finally process the application). *See Angelotti Chiropractic, Inc. v. Baker*, 791 F.3d 1075, 1081 (9th Cir. 2015) (because the right to workers' compensation benefits is "wholly statutory," such rights are not vested until they are "reduced to final judgment."). Richter relies on *Knudson v. City of Ellensburg*, 832 F.2d 1142 (9th Cir. 1987), but there, the court was considering Washington State statutes and caselaw that provided, the "statutory right to the disability medical benefit likewise vested when she suffered disabling injury while employed by the City. Once vested, her benefit could not be cut off by her work discharge." *Id*. at 1146. The defendants here rely on *Quintana v. Bd. of Admin*., 54 Cal. App. 3d 1018, 1022 (Cal. Ct. App. 1976) where the court acknowledged that "the contingency that would give rise to a right to receive pension payments is the existence of a disability and in one sense that right is not 'vested' until the disability is established in the appropriate administrative proceedings." *Id*. at 1022 (quoting *Brophy v. Employees Retirement System*, 71 Cal.App.2d 455). The *Quintara* court noted that because of the significance of the determination of whether someone is disabled, the "fundamental vested right" to a disability pension meant a claimant should receive "independent judicial review" of an adverse pension board determination. *Id*. at 1023.

Defendants also argue, assuming that there was some vested right to apply for or receive IDR benefits, there has been no *uncompensated* taking because benefits have been awarded. But defendants do not engage with and ignore the Supreme Court cases cited by Richter that recognize a taking is effectuated and compensation is due "contemporaneously" with the taking, and that

14

"the compensation must generally consist of the total value of the property when taken, plus interest from that time." *Knick v. Township of Scott, Pennsylvania*, 139 S.Ct. 2162, 2170 (2019).

Defendants point out that Richter alleges the taking occurred in 2018, but because Richter remained on the City's payroll until 2020, there could not have been any taking. That argument may cut off any right or interest until 2020, but defendants ignore the obvious gap between 2020 when Richter was terminated and 2023 when IDR benefits were awarded.

On this record, and given defendants' failure to cite cases showing that Richter's Takings Clause claim, including interest damages, is foreclosed as a matter of California law, the motions to dismiss or for judgment on this claim are DENIED.

### D.   California Code of Civil Procedure § 1094.5

Defendants argue that they are entitled to summary judgment or to dismiss Richter's claim for relief under California Code of Civil Procedure § 1094.5 because the claim is "only applicable to state courts." Oak. Oppo. at 14; Stanfield Supp. Br. at 10. Defendants, apparently, fail to remember that in my February and July 2021 Orders, I concluded that under Ninth Circuit precedent a section 1094.5 claim could be asserted in federal court. Dkt. No. 74 at 27; Dkt. No. 115 at 9.

As noted in my February 2021 Order, however, Richter alleged a violation of this provision in order to challenge an administrative decision. *Id*. at 27. That decision – by the OAH on her IDR application – has now been rendered. Richter does not argue that anything the ALJ did was wrong or otherwise make an argument that any continued relief under this section is sought or warranted. Summary judgment is therefore granted to defendants on Richter's § 1094.5 claim.

### E.   New Theories of Liability/Damages

In her motion for partial summary judgment, Dkt. No. 164, Richter alleges new theories of liability or sources of damages with respect to defendants' actions.

#### 1.   CalPERS Formula

Richter argues that Oakland's delay in processing her IDR application means that a change in CalPERS' formulas for determining the level of benefits means that she is receiving a lower

amount of benefits than she would have if Oakland had forwarded her application to CalPERS back in 2018 or 2019. Dkt. No. 164 at 2. She quotes what she describes as a provision of the "California Pension Reform Act" that "adds a calculation for a safety member who qualifies for an IDR that may result in a higher benefit than 50 percent of salary." *Id*. Oakland disputes that contention, arguing there has been no change in CalPERS' formulas that would impact the calculation of Richter's benefits and citing California Government Code § 21400.[9]

The formula that should be used to determine Richter's IDR benefits is a matter between Richter and CalPERS. Her new arguments are not appropriately resolved by me, considering that they are not pleaded in the FAC and are not connected to any remaining cause of action. If Richter disputes the amount of her payments, the presumable recourse is through the OAH/ALJ process that Richter pursued in the first instance to require Oakland to process her IDR application.

### 2.     Cal. Govt. Code § 815.6

In her motion for partial summary judgment, Richter attempts to reallege her theory that under California Government Code § 815.6, defendants had a mandatory duty to provide her benefits under Government Code §§ 21151-21157. Dkt. No. 164 at 5-9. That provision provides:

> Mandatory duty of public entity to protect against particular kinds of injuries
>
> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

Cal. Govt. Code § 815.6. Richter argues under California Government Code sections 21151-

---

[9] Cal. Govt. Code § 21400 ("Safety member retiring on or after Jan. 1, 2013 for industrial disability; disability retirement benefit [] A safety member who retires on or after January 1, 2013, for industrial disability shall receive a disability retirement benefit equal to the greater of the following: (a) Fifty percent of the member's final compensation, plus an annuity purchased with their accumulated additional contributions, if any. (b) A service retirement allowance, if the member is qualified for service retirement. (c) An actuarially reduced factor, as determined by the actuary, for each quarter year that the member's service age is less than 50 years, multiplied by the number of years of safety service subject to the applicable formula, if the member is not qualified for service retirement. (d) Nothing in this section shall require a member to receive a lower benefit than the member would have received prior to January 1, 2013, as the law provided prior to that date.").

16

21157 that Oakland was under a mandatory duty to process her disability application and forward it to CalPERS.

Defendants point out that in order to seek damages under this provision that exempts government entities from immunity for negligent mandatory acts, a claim must be filed. There is no allegation that Richter has filed such a claim. Even more problematic is that Richter attempted to allege a mandatory duty claim in a prior round of motions and I denied leave to amend to include it. *See* February 2021 Order at 18-19, 25. Richter cannot attempt to reallege this rejected claim.

### 3. Breach of Contract

Richter argues she is a third-party beneficiary of the City-Union contract as well as the City-CalPERS contracts, allowing her to sue for their breach by Oakland's acts. Dkt. No. 164 at 8-9. I denied leave to amend to state a breach of contract claim in my February 2021 Order. Dkt. No. 74 at 18-19. This claim may not be realleged.

### 4. Promissory Estoppel

Richter similarly alleges that she has a promissory estoppel claim based on the City's duty to retire her within 6 months under Cal. Govt. Code §§ 21151-21157, which the City failed to do. Richter says that she relied on the City's statutory "promise" to do so. Dkt. No. 164 at 10-11. I denied leave for Richter to allege this claim in my February 2021 Order. Dkt. No. 74 at 13-14. It may not be realleged.

### 5. Breach of Fiduciary Duty

Similarly, Richter's Breach of Fiduciary Duty arguments in her motion, Dkt. No. 164 at 11, were blocked from the case in my February 2021 Order. Dkt. No. 74. At 21-24. They may not be realleged.

### 6. Interest, damages, and penalties

Finally, in her motion for partial summary judgment, Richter seeks an award of pre- and post-judgment interest, as well as court costs and damages. Richter Mot. at 2, 12. I cannot award interest on anything other than a judgment that I might enter if and when Richter's prevails on a cause of action before me. No such judgment has been entered in this case. Richter has not

identified any statute or rule that entitled her to an award of penalties at this juncture.

## CONCLUSION

Richter's motion for partial summary judgment is DENIED. The Oakland defendants and Stanfield's motions for summary judgment or to dismiss are GRANTED with respect to Richter's claims of denial of equal protection and violation of California Code of Civil Procedure § 1094.5 but otherwise denied. The only claims remaining in this case are 42 U.S.C. section 1983 claims for denial of procedural due process and violation of the Takings Clause; both based on the defendants' apparent delay in processing her industrial disability retirement ("IDR") application. This case is STAYED until the parties attend a settlement conference with Magistrate Judge Thomas S. Hixson. As I indicated at the Case Management Conference, if the parties cannot resolve this case with Judge Hixson, I will allow three months of discovery and set the case for trial.

**IT IS SO ORDERED.**

Dated: April 6, 2023

William H. Orrick
United States District Judge